**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| Dorothy Thomure, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: |
| SRG Global Coatings, LLC (*d/b/a* SRG Global Farmington), | ) ) ) | |
| Defendant. | ) ) | |

**CLASS ACTION COMPLAINT**

Plaintiff, Dorothy Thomure ("Plaintiff" or "Representative-Plaintiff"), individually and on behalf of all others similarly situated ("Class Members" or "Class"), and through Ted N. Gianaris and Joshua A. Edelson of Gianaris Trial Lawyers, LLC, state as follows for their Class Action Complaint against Defendant, SRG Global Coatings, LLC. ("SRG," "SRG Global," or "Defendant"):

NATURE OF ACTION, JURISDICTION, AND VENUE

1.    This is a putative Class action on behalf of the Representative-Plaintiff and other similarly situated persons harmed by SRG Global release of hazardous chemicals (namely, PFA/PFAS)[1] and metals into the environment and surrounding properties of those in and around SRG Global's facility located at 2055 Progress Drive, Farmington, St. Francois County, Missouri

---

[1] "PFA/PFAS" includes, but is not limited to: perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals, including, but not limited to, those that degrade to PFOA and/or PFOS, and including, but not limited to, C3-C-15 PFAS chemicals, such as perfluorohexanesulfonate (PFHxS), perfluorononanoate (PFNA), perfluorobutanesulfonate (PFBS), perfluorohexanoate (PFHxA), perfluoroheptanoate (PFHpA), perfluoroundecanoate (PFUnA), perfluorododecanoate (PFDoA), HFPA Dimer Acid (CAS # 13252-13-6/C3 Dimer Acid/P-08-508/FRD903/GX903/C3DA/GenX), and HFPA Dimer Acid Ammonium Salt (CAS# 62037-80-3/ammonium salt of C3 Dimer Acid/P-08- 509/FRD902/GX902/GenX).

63640 ("Facility"), which has contaminated the soil, groundwater, and drinking water of the neighboring homes and properties in and around the facility within Farmington, Missouri.

2.      The hazardous chemicals and metal pollution by SRG Global has, and continues to, expose Representative Plaintiff and other putative Class Members to PFA/PFAS, hexavalent chromium, chromium, and nickel, as well as other hazardous chemicals and metals, that has caused damages, nuisance, reduction of property values, and necessitates medical monitoring for the Representative Plaintiff and members of the Putative Class.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2) in that this is a Class action, as defined in 28 U.S.C. §1332(d)(1)(B), in which the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs. Additionally, this Court has jurisdiction because there is complete diversity of citizenship between Representative Plaintiff and Defendant.

4.      This Court has personal jurisdiction over Defendant because Defendant's facility at issue in this matter is located in Farmington, Missouri and is where the allegations giving rise to this lawsuit occurred.

5.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because the damages to Representative Plaintiff, and the putative Class Members, occurred within this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

<u>PARTIES</u>

6.      Plaintiff, Dorothy Thomure, is a Missouri citizen and resident currently residing at 4033 Fleming St., Farmington, Missouri 63640, who brings this case on behalf of herself and all other Farmington, Missouri citizens, residents, and property owners similarly situated.

7.      Plaintiff and putative Class Members are past and present Farmington, Missouri residents.

8.      Defendant, SRG Global Coatings, LLC, is a Delaware limited liability corporation.

9.      SRG's sole member is Guardian Industries Holdings, LLC, a Delaware limited liability corporation.

10.     The sole member of Guardian Industries Holdings, LLC is GI, LLC, a Delaware limited liability corporation.

11.     The sole member of GI, LLC is Guardian Industries Resources, LLC, a Delaware limited liability corporation.

12.     The sole member of Guardian Industries Resources, LLC is Guardian Industries Equity Holdings, LLC, a Delaware limited liability corporation.

13.     The sole member of Guardian Industries Equity Holdings, LLC is KGIC Holdings, LLC, a Delaware limited liability corporation.

14.     The sole member of KGIC Holdings, LLC is Koch Industries, Inc., a privately held corporation with its principal place of business in Wichita, Kansas.

15.     For purposes of determining diversity of citizenship, SRG is a citizen of Kansas and Delaware, and Dorothy Thomure is a citizen of Missouri.

FACTUAL ALLEGATIONS

16.     SRG owns and operates a facility in Farmington, Missouri where, products have been manufactured for the automotive industry using hazardous chemicals and metals including, but not limited to, PFA/PFAS, hexavalent chromium, chromium, and nickel.

17.     PFA/PFAS chemicals are toxic, persist in the environment, and bioaccumulate in humans and animals. As early as the 1960s, it was known that PFA/PFAS chemicals do not degrade

in the environment. Studies from the 1970s concluded that PFA/PFAS were even more toxic than previously believed.

18.     PFA/PFAS chemicals persist in the environment, particularly in water, and permeate in, and move through, air, soil, and into groundwater, where it is often ingested by humans and becomes toxic as it bioaccumulates in the blood stream, kidneys, liver, and other organs and tissues of humans thereby causing, and posing serious threats to, chronic and acute health conditions, including various cancers and birth defects.

19.     These hazardous chemicals and metals from the Farmington SRG property have contaminated the soil, groundwater, and drinking water connected to and underneath the properties and surrounding properties in and around the Farmington SRG facility.

20.     Farmington, Missouri residents and property owners in and around SRG's facility have been and are being exposed to the subject hazardous chemicals in their drinking water, which is drawn from groundwater wells, including wells on and around the subject SRG facility.

21.     SRG has withheld information from Farmington, Missouri residents regarding the nature and extent of hazardous contamination of their properties and drinking water.

22.     The hazardous chemicals in their soil, groundwater, and drinking water is, and has increased the risk of disease, cancer, and other injuries to human health, has caused Plaintiff's and Class Members' property values to decrease.

23.     The hazardous substances to which Plaintiff and the Class have been exposed to are known to cause serious illnesses, as described above and including without limitation various forms of cancer. Persons such as Plaintiff and the Class who have been exposed to, and continue to be, the hazardous substances caused by Defendants' tortious conduct have a significantly increased risk of contracting various diseases, including but not limited to cancer.

24.     The exposure to which Plaintiff and the Class have been subjected make it reasonably necessary for them to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of their exposure. Monitoring procedures exist that make possible the early detection of the diseases and/or illnesses for which Plaintiff and the Class are at an increased risk and there are treatments for the disease(s).

25.     Early diagnosis and treatment for the cancers, diseases, and disorders caused by PFA/PFAS exposure is essential to detect and mitigate long-term health consequences in Plaintiff and the Class. Simple procedures including, but not limited to, blood tests, skin evaluations, scans, urine tests, and physical examinations are well-established, effective, and readily available.

26.     These measures are essential to preventing and/or mitigating long-term health consequences that will be borne by Plaintiff and the Class Members through no fault of their own and due to Defendant's actions in exposing them to dangerous chemicals and, in some cases, these measures can, and are likely, to prove lifesaving.

27.     The requested tests, procedures, scans, and examinations will be specifically tailored to assess and monitor conditions that relate to PFA/PFAS exposure. These tests, procedures, scans, and examination would not be necessary in the absence of a known exposure to these chemicals. Further, these tests, examinations, and procedures will need to occur more frequently than the normal recommended schedule of examinations for a population that had not been exposed to these levels of PFA/PFAS chemicals.

28.     The required testing is reasonably necessary and in accord with current medical and scientific procedures. Plaintiff and the Class have no other adequate remedy at law, and medical monitoring through the establishment of a medical monitoring fund is reasonably necessary.

29.     Plaintiff, Dorothy Thomure, and the Class have, and continue to, be exposed, to hazardous chemicals in their drinking water and on their properties, which has occurred for many years and to the present.

30.     As a direct and proximate result of Plaintiff's and the Class Members' exposure to hazardous chemicals in their drinking water for many years and to the present from Defendant's facility, Plaintiff and putative Class Members are entitled to damages, medical monitoring damages, the reduction in the fair market value of their properties, and any other relief appropriate under the circumstances.

31.     Defendant has acted with complete indifference and conscious disregard for the health and safety of Plaintiff and the putative Class Members, who have been exposed to hazardous chemicals that are carcinogenic and hazardous to human health and have lost monetary value of their properties.

## PLAINTIFF'S EXPERIENCE

32.     Plaintiff, Dorothy Thomure, is a resident and property owner within the community in and around SRG's facility in Farmington, Missouri.

33.     Plaintiff, like many other Class Members, receives water from a private well located on her property that, like many other Class Members, is contaminated by PFA/PFAS and other toxic chemicals from SRG's facility.

34.     Plaintiff and the Class Members have consumed, bathed in, washed with, and cooked with water containing PFA/PFAS and other toxic chemicals, and have been, and are being, significantly exposed to elevated levels of PFA/PFAS chemicals.

35.     PFA/PFAS chemicals have entered Plaintiff's property and home and accumulated in the pipes, faucets, showerheads, and appliances. PFA/PFAS chemicals have accumulated in surface water on her property through irrigation.

36.     As a result of these exposures to PFA/PFAS chemicals from SRG's Farmington, Missouri facility, Plaintiff's property has declined in value and has an increased risk of contracting numerous diseases relative to what would be the case in the absence of such exposure.

37.     Plaintiff has been exposed to elevated levels of PFA/PFAS chemicals from the contaminated water supply in an amount that is in excess of the ATSDR's minimum appreciable health risk level.

## CLASS ACTION ALLEGATIONS

38.     Pursuant to Federal Rule of Civil Procedure 23, the Representative-Plaintiff brings this action on behalf of herself, and other members of the putative Class.

39.     The putative Class for this case is: "All past and present Farmington, Missouri residents who have been exposed to hazardous contaminants that migrated from Defendant's, SRG Global, Farmington, Missouri facility or who own property in and around this facility."

40.     Excluded from the putative Class for this case is the Judge to whom this case is assigned and such Judge's family members, Defendant, Defendant's agents and representatives, Plaintiff's counsel, Defendant's counsel, all those who timely opt out of the certified Class, and the legal representatives, successors, and assigns of any such excluded person.

41.     Plaintiff reserves the right to modify the Class definitions as additional information is learned through discovery.

42.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements for Class certification set forth in Rule 23 of the Federal Rules of Civil Procedure.

43.    The members of the Class may number in the hundreds or more, are so numerous that joinder of all Class Members in this case is impractical.

44.    There is a well-defined commonality between Plaintiffs and the putative Class.

45.    There are common questions of law and fact applicable to the claims asserted herein on behalf of the Class. Those common questions include, but are not limited to:

a.  Whether the Defendant acted negligently;
b.  Whether the Defendant has caused a nuisance;
c.  Whether the nuisance is temporary and abatable;
d.  Whether Plaintiff and putative Class Members were harmed by hazardous chemicals and metals contamination, including, but not limited to, PFA/PFAS, hexavalent chromium, chromium, and nickel, from SRG's facility in Farmington, Missouri;
e.  Whether Plaintiff and putative Class Members are entitled to medical monitoring damages because of the contamination by Defendant;
f.  Whether Plaintiff and putative Class Members are entitled to the loss in value of their properties as a result of the contamination by Defendant;
g.  Whether any of the defenses asserted by Defendant are appropriate;
h.  Whether and to what extent Defendant contaminated Plaintiff's and the Class Members' water supply with PFA/PFAS and other toxic chemicals;
i.  What acts of Defendant caused Plaintiff and the Class to be exposed to PFA/PFAS contaminated water;
j.  Whether Defendant knew or should have known exposure to PFA/PFAS could increase health risks;
k.  Whether Defendant knew or should have known that their facility contaminated, or was likely to contaminate, the surrounding properties;
l.  Whether Defendant acted with deliberate indifference to a known or obvious danger;
m. Whether Defendant's actions or failure to act constituted gross negligence or recklessness;
n.  Whether PFA/PFAS contamination caused and continues to cause a continuous invasion of the property rights of Plaintiff and the Class such that their property values have or continue to decline in value;
o.  Whether PFA/PFAS contamination caused and continues to cause a continuous invasion of the property rights of Plaintiff and the Class such that it has substantially interfered with Plaintiff's and the Class Members' use and enjoyment of their properties;
p.  Whether Plaintiff and Class Members are entitled to damages and other monetary and equitable relief, including but not limited to punitive damages, declaratory, and prohibitory and mandatory injunctive relief against Defendant; and,

      q. What medical monitoring, limiting, and/or supervisory procedures and practices should Defendant be required to implement to ensure ongoing protection of the Plaintiff and each Class Member's rights and as part of any prohibitory and mandatory injunctive relief ordered by this Court.

46.    Plaintiff's claims are typical of the claims of the Class.

47.    Questions of law and fact common to the members of the Class overwhelmingly predominate over any questions affecting only individual Class Members.

48.    A Class action is superior to other available methods for fair and efficient adjudication of the controversy because the number of Class Members is estimated to be in the hundreds, the expense and burden of individual litigation of these claims is impracticable or impossible given the size of the Class Members' claims, and a single trial of these claims is manageable.

49.    The Representative-Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. The Representative-Plaintiff's interests are not antagonistic to those of all members of the Putative Class, and the Representative-Plaintiff understands her duties to the Class and is prepared to fulfill them. Representative-Plaintiff has retained competent and experienced counsel in the prosecution of this Class action litigation. In addition to satisfying the prerequisites of FRCP 23(a), Plaintiff also satisfies the requirements for maintaining a Class action under FRCP 23(b)(1-3).

50.    Common questions of law and fact predominate over any questions affecting only individual Class Members, and a Class action is superior to individual litigation here because:

      a. The amount of damages available to an individual Plaintiff is insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the Class action procedure;

      b. Individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and,

c.   The Class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT 1 – NEGLIGENCE
### (On Behalf of the Plaintiff and the Class)

51.    Plaintiff and members of the Class incorporate by reference the foregoing paragraphs herein.

52.    Defendant had a duty to exercise reasonable care to protect Plaintiff and all members of the putative Class and their properties.

53.    Defendant knew or should have known: (a) exposure to PFA/PFAS and other toxic chemicals from its facility were, and are, hazardous to the environment and to human health; (b) the manner in which they were polluting, emitting, and contaminating the neighboring community with PFA/PFAS and other toxic chemicals was, and is, hazardous to human health through its potential for bioaccumulation in human blood, organs, and tissue which causes serious health effects, including cancer; (c) PFA/PFAS chemicals are highly soluble in water, highly mobile, extremely persistent in the environment, and highly likely to contaminate water supplies if released; (d) the manner in which it manufactured its products using PFA/PFAS and other toxic chemicals and byproducts would result in the contamination of the neighboring community and properties, including their private drinking wells.

54.    Defendant manufactured its products with knowledge that the processes contained toxic levels of PFA/PFAS and other chemicals and that it maintained inadequate systems of safe and proper release, storage, and disposal of such toxic chemicals, which could be, and were in fact, released into the environment and groundwater of the neighboring community and properties.

55.    Defendant did the foregoing with knowledge of the dangerous and hazardous properties of such chemicals, and it was foreseeable that such toxic chemicals would be released

from its facility and contaminate the surrounding environment, soil, surface water, groundwater, waters, and drinking water supplies of neighboring Farmington, Missouri residents and property owners.

56.     Defendant knew or should have known that safety precautions and pollution monitoring safeguards would be required or needed to prevent the release of such toxic chemicals into the neighboring environment, soil, surface water, groundwater, and drinking water supplies of the homes and properties surrounding its facility.

57.     Defendant had a duty to warn of the hazards associated with such toxic chemicals entering and poisoning the environment, soil, groundwater, drinking water, and properties of Plaintiff and Class Members from its facility.

58.     Considering the above factors regarding risk, foreseeability, social utility, burden of guarding against the harm, and the practical consequences of placing that burden on Defendant, Defendant owed a reasonable and cognizable duty to Plaintiff and Class Members to not contaminate private individual and/or private community well water supplies, the surrounding environment, and groundwater with such toxic chemicals from its facility.

59.     Upon learning of the release of such toxic chemicals, Defendant owed Plaintiff and the Class a duty to warn and notify them and/or act reasonably before the contamination harmed and injured Plaintiff and the Class and their properties any further in order minimize and mitigate the damages already suffered and that will materialize over time.

60.     Defendant breached its duties by allowing such toxic chemicals to be released into the environment of the neighboring community and properties of Plaintiff and the Class through its failure to warn of the dangers that such chemicals would enter and poison the environment, groundwater, and properties of the Plaintiff and the Class.

61.     Defendant negligently, grossly negligently, and/or recklessly, breached their legal duties to Plaintiff and the Class in that it failed to exercise the slightest of care in preventing or mitigating its toxic releases and contamination, which was, and is, substantially and appreciably greater than ordinary negligence.

62.     Defendant also breached its duties owed to the Plaintiff and the Class by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, remediate, mitigate, or remedy any toxic contamination from its facility after it occurred. Defendant's failure to notify Plaintiff and the Class in a timely manner of the toxic chemical contaminations of the environment and properties of Plaintiff and the Class constitutes additional breaches of the duties that Defendant owed Plaintiff and the Class.

63.     Defendant's breaches were the direct and proximate causes of the harms to Plaintiff and the Class, and their injuries, damages, and the imminent, substantial, and impending harm to their health and properties, which have become, and continue to be, contaminated with unsafe and dangerous levels of PFA/PFAS and other toxic chemicals.

64.     As a direct and proximate result of Defendant's breaches, Plaintiff and the Class were delayed from undertaking effective and immediate remedial measures. Plaintiff and the Class have expended and/or will be forced to expend significant resources to test, monitor, and remediate the poisonous effects of Defendants' negligence and/or gross negligence for many years.

65.     Plaintiff and the Class suffered foreseeable harm, injuries, and damages as a direct and proximate result of Defendant's negligent and/or grossly negligent breaches of its duties as set forth above.

66.     At the time Defendant breached its duties to Plaintiff and the Class, Defendant's acts and/or failures to act posed recognizable and foreseeable risks of apparent harm, injury,

damage, and danger to Plaintiff and the Class, entitling them to be protected against Defendants'
actions and/or inactions.

67.     Plaintiff and Class Members have been significantly exposed to proven hazardous
substances through the negligent and/or grossly negligent actions of Defendant.

68.     As a proximate result of such exposures, Plaintiff and Class Members have, and
continue to, suffer from a significantly increased risk of contracting one or more serious latent
diseases, which makes periodic diagnostic medical examinations reasonably necessary.

69.     Monitoring and testing procedures exist that make the early detection and treatment
of these diseases possible and beneficial.

70.     As described more fully herein, exposure to PFA/PFAS leads to bioaccumulation
of such toxic chemicals in human blood, organs, and tissue thereby seriously increasing the risk of
contracting numerous diseases. Medical tests currently exist that can determine the level of
PFA/PFAS in the blood. Exposure to and bioaccumulation of PFA/PFAS significantly increases
the risk of contracting serious medical conditions. Accordingly, periodic medical examinations to
detect latent diseases are both reasonable and necessary. A thorough medical monitoring plan,
following common and accepted medical practices, can and should be developed for the Plaintiff
and members of the Medical Monitoring Class to assist in the early detection and beneficial
treatment of the diseases that can develop as a result of exposure to PFA/PFAS.

71.     Neither Plaintiff nor other members of the Classes contributed to the unlawful
conduct set forth herein, nor did they contribute to Defendants' unlawful, unfair, and deceptive
practices, nor to the insufficient measures to provide a safe product and to safeguard the health and
property rights of Plaintiff and members of the Class.

72.     Plaintiff and members of the Class seek compensatory damages with applicable pre-and-post judgment interest, the costs of suit, attorneys' fees, and other and further relief as this Court deems just and proper, in an amount to be determined at trial, resulting from the harms, damages, and injuries to their persons and property sufficient to compensate them for such harms and losses sustained, and to restore them to their original position, and as described below.

## COUNT 2 – PRIVATE NUISANCE
### (On Behalf of the Plaintiff and the Class)

73.     Plaintiff and the Class Members incorporate by reference the foregoing paragraphs herein.

74.     The conduct of Defendant alleged herein created a substantial and unreasonable interference with Plaintiff's and Class Members' use and enjoyment of their properties, as well as a substantial and unreasonable threat to their health and safety.

75.     Plaintiff's and Class Members' drinking water supply contains toxic levels of PFA/PFAS and other toxic chemicals originating from Defendant's facility.

76.     Defendant failed to prevent or mitigate the release of such toxic chemicals from its facility, which have, as a result, entered and contaminated the properties of Plaintiff and Class Members and haves caused damages.

77.     Defendant's releases and failures to prevent migration of hazardous chemicals and metals onto the properties of Plaintiff and Class Members has substantially impaired Plaintiffs' use and enjoyment of their properties and has caused their damages including, but not limited to, the need for medical monitoring and the reduction in the fair market value of Plaintiff's and the Class Members' properties caused by the nuisance.

## COUNT 3 – MEDICAL MONITORING
### (On Behalf of the Plaintiff and the Class)

78.     Plaintiff and the Class incorporate by reference the foregoing paragraphs herein.

79.     Plaintiff and the Class have accumulated PFA/PFAS chemicals in their blood and bodies from Defendant's facility and have an increased risk of developing various diseases, illnesses, and adverse health conditions set forth herein.

80.     As a result, they have suffered and sustained a present and concrete injury-in-fact constituting standing for an independent claim or cause of action (and also as an element of damages) for medical monitoring associated with Plaintiff's and the Class Members' other claims, and for those Class Members who have actually developed the diseases and conditions resulting from exposure to Defendant's contamination and pollution.

81.     Plaintiff and the Class have an increased risk of developing and contracting serious latent diseases and health conditions as set forth herein that are medically cognizable: (a) from a significant exposure to a proven hazardous substance with a proven or probable causal link to a human disease; (b) proximately caused by the Defendant's negligence or intentional acts; and (c) that create a significantly increased risk to Plaintiff and the Class who have been, and will continue to be, exposed to such toxic chemicals from Defendant's facility.

82.     Plaintiff's and the Class's increased risk of latent diseases and health conditions makes periodic diagnostic medical examinations reasonably necessary.

83.     This monitoring procedure exists and makes the early detection and treatment of PFA/PFAS related diseases possible and beneficial. The prescribed monitoring is different from that normally recommended in the absence of exposure and is reasonably necessary according to contemporary scientific principles. A treatment exists that makes the early detection of such diseases beneficial and/or preventable.

84.    Defendant knew or should have known that the way it manufactured, stored, disposed, and its lack of any adequate safeguards to prevent such releases and contamination of PFA/PFAS from its facility would result in the toxic contamination of the properties and drinking water of the Plaintiff and the Class Members.

85.    Defendant knew or should have known that exposing humans to PFA/PFAS contamination would be hazardous to human health and the environment. Plaintiff and the Class have been exposed to PFA/PFAS chemicals and potentially other toxic substances that resulted from the use, storage, and discharge of such toxic chemicals from Defendant's facility.

86.    As further set forth herein, exposure to PFA/PFAS leads to the bioaccumulation of these toxic, dangerous, hazardous, and poisonous chemicals in the blood, and thereby seriously increase the risk of contracting numerous diseases relative to what would be the case in the absence of such exposure. Medical tests currently exist that can determine the level of the PFA/PFAS related contaminates in the blood and organs of the body necessary in order to diagnose properly the warning signs of related diseases, which are preventable and/or curable, and are types of tests a reasonable physician in the area of specialty would order to similarly situated patients.

87.    Because exposure to, and bioaccumulation of, PFA/PFAS significantly increases the risk of contracting one or more serious medical conditions, thorough, periodic, and regular medical monitoring and examinations following common and accepted medical practices can and should be developed for the Plaintiff and the Class for the early detection and beneficial treatment of the serious latent diseases that can develop as a result of exposure to PFA/PFAS and other toxic chemicals that were released and discharged from Defendant's facility.

## COUNT 4 – TRESPASS
### (On Behalf of the Plaintiff and the Class)

88.     Plaintiff and the Class Members incorporate by reference the foregoing paragraphs herein.

89.     Plaintiff and Class own and possess their drinking water well systems that extract groundwater in Farmington, Missouri. Plaintiff and the Class actually and actively exercise their rights to appropriate and use groundwater drawn from their wells. Neither Plaintiff nor any Class Members gave Defendant permission to cause PFA/PFAS chemicals to enter their groundwater wells. Defendant's acts and failures to act caused PFA/PFAS contaminants to enter upon Plaintiff's and the Class Members' property.

90.     Defendant utilized products containing PFA/PFAS chemicals that Defendant knew or reasonably should have known would be discharged and released into the ground and intrude upon, contaminate, and damage Plaintiff's and the Class Members' persons and possessory property interests.

91.     Defendant's willful conduct directly resulted in the placement of PFA/PFAS chemicals on and in property owned by Plaintiff and the Class Members without permission or right of entry.

92.     Defendant knew or should have reasonably known, without limitation that: (a) their acts and failures to act would cause injury and damage, including PFA/PFAS contamination of Plaintiff's and the Class Members' groundwater supply; (b) their deliberate acts and failures to act would and in fact, and did, release PFA/PFAS contaminants that were substantially certain to invade the water and properties of Plaintiff and the Class; (c) PFA/PFAS contamination would migrate into Plaintiff's and the Class Members' groundwater wells and drinking water; (d) PFA/PFAS chemicals have a propensity to contaminate groundwater aquifers when released into

the environment; (e) PFA/PFAS chemicals are mobile and persistent contaminants and migrate, drift, and move substantial distances within groundwater aquifers; and (f) PFA/PFAS chemicals are toxic and hazardous to water systems and human health.

93.    Defendant is, and was, a substantial factor in bringing about the contamination of Plaintiff's and the Class Members' wells and is responsible for the injuries and damages caused to Plaintiff and the Class. Defendant's actions resulted in PFA/PFAS contaminants to enter Plaintiff's and Class Members' persons and properties, damage to their properties, and substantially increase the risk of developing numerous diseases, disorders, and illnesses, as described herein.

94.    Defendant's actions were done with actual malice or wanton, reckless or willful disregard for Plaintiff's safety, rights, and/or property.

95.    Defendant's actions and/or omissions were the proximate cause of Plaintiff's and the Class Members' injuries.

96.    As a direct and proximate result of Defendant's conduct, acts, and/or failures to act: (a) toxic PFA/PFAS chemicals have entered the persons, wells, and property of Plaintiff and the Class Members; (b) Plaintiff and the Class Members have been placed at a substantially increased risk for developing numerous diseases, disorders, and illnesses, as described herein; and (c) Plaintiff and the Class Members have suffered and sustained actual injuries and damages related to the PFA/PFAS contamination of their wells, persons, and properties, and consequential damages in an amount to be proved at trial.

97.    Defendant is liable for all such damages, and Plaintiff and the Class Members are entitled to recover all such damages and other relief, including the value of the use of the continuous trespass, as set forth herein.

98.     As a result of Defendant's intentional and unreasonable actions or failures to act, and Defendant's actions while knowing or having reason to know that it was unauthorized to act as so, Defendant has wrongfully caused waste and injury to Plaintiff's and the Class Members' land.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dorothy Thomure, individually and on behalf of the proposed Class, request this Court:

i.   Certify this case as a Class action on behalf of the members of the Class as defined above, appoint Dorothy Thomure as Class representative, and appoint her attorneys as Class Counsel;

ii.  Award declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

iii. Declare that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and properties of Plaintiff and Class Members;

iv.  Order Defendant to pay for a testing and monitoring protocol to test each property and its drinking water for the properties belonging to Plaintiff and the members of the Class;

v.   Order the establishment of a medical monitoring protocol for Plaintiff and the Class;

vi.  Award injunctive relief as is necessary to protect the interests of Plaintiff and the Class Members;

vii. Award general damages, compensatory damages, nominal damages, punitive, and/or exemplary damages to the extent allowable to Plaintiff and Class Members and in an amount to be determined at trial;

viii. Award Plaintiff and Class Members their reasonable litigation expenses, costs, and attorneys' fees;

ix.  Award Plaintiff and Class Members pre- and post-judgment interest to the extent allowable; and,

x.   Award such other and further relief as equity and justice may require or that this Court may deem just and proper under the circumstances.

Respectfully submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: */s/ Joshua A. Edelson*
     Joshua A. Edelson, MO #70952
     Ted Gianaris, MO #48359
     One Court Street
     Alton, IL 62002
     (618) 619-0010
     (618) 259-2251 (Fax)
     tgianaris@lawforpeople.com
     jedelson@lawforpeople.com
     *Attorneys for Plaintiffs*