# EXHIBIT 1

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Confidential Settlement Agreement and Limited Release (the "Agreement") is entered into by and between SRG Global Coatings, LLC *d/b/a* SRG Global Farmington ("SRG") and Plaintiff Dorothy Thomure, individually and on behalf of all others similarly situated (the "Parties").

## RECITALS

WHEREAS, SRG Global Coatings, LLC is a Delaware Limited Liability Company in good standing and is the owner of the property located at 2055 Progress Drive, Farmington, Missouri 63640 (the "SRG Facility");

WHEREAS, Dorothy Thomure is a Missouri citizen and resident, and resides at 4033 Fleming St., Farmington, Missouri 63640;

WHEREAS, on March 23, 2023, Plaintiff filed this Lawsuit against SRG in the United States District Court for the Eastern District of Missouri, styled *Dorothy Thomure, individually and behalf of all others similarly situated v. SRG Global Coatings, LLC (d/b/a SRG Global Farmington)*, 4:23-cv-00375-HEA. In the Lawsuit, Plaintiff asserted claims against SRG under common law (negligence, private nuisance, trespass) and for medical monitoring based on the allegation that hazardous chemicals and metals, including hexavalent chromium, chromium, nickel, and per- and polyfluoroalkyl substances ("PFAS"), have migrated from the SRG Facility and in, on, around and about the surrounding groundwater, drinking water and land, as well as other allegations about SRG and the SRG Facility;

WHEREAS, in the Lawsuit, Plaintiff alleges that she, like many other Class Members, receives water from a private well located on her property that, like many other Class Members, is contaminated by PFAS and other chemicals, which Plaintiff alleges migrated from the SRG

Facility;

WHEREAS, the Plaintiff and Class Members allege that they are in need of an alternative water source to their private wells based on the alleged contamination by PFAS and other chemicals;

WHEREAS, SRG denies any and all wrongdoing or liability in connection with Plaintiff's claims, and SRG disputes the scientific, factual, legal, and other bases for Plaintiff's claims and the appropriateness of certifying a class action for litigation; and

WHEREAS, based upon the uncertainty and expense involved in litigation, the Parties have concluded that it is in the best interests of the Parties to avoid protracted, time-consuming and costly continuation of the Lawsuit and to settle the Lawsuit, subject to Court approval, on the terms set forth herein;

NOW THEREFORE, subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23, the Parties hereby agree that, in consideration of the promises and mutual covenants set forth in this Agreement and upon occurrence of the Effective Date, the Lawsuit and the related claims of Releasing Parties shall be settled, compromised, dismissed, and released on the following terms and conditions:

1.    **DEFINITIONS**

For purposes of this Agreement, the following terms shall have the meanings set forth below:

1.1.    **"Agreement"** means this Class Settlement Agreement including all exhibits.

1.2.    **"CAFA Notice"** means the notice to be disseminated to appropriate federal and state officials pursuant to the requirements of 28 U.S.C. § 1715(b) and in accordance with Section 6 of this Agreement.

1.3.    **"Class"** means all deed holders, and deedholders' spouses who own property  in

the Class Area on the date of the last signature to this Agreement; provided, however, that the "Class" shall not include (a) Defendants, their corporate officers, or their legal counsel in this Lawsuit; (b) Class Counsel, including its partners, members, and shareholders, or (c) the judge to whom this Lawsuit is assigned, any member of the judge's immediate family, or any other judicial officer assigned to this case.

     1.4.   **"Class Administrator"** means the Person or Persons selected by Class Counsel and approved by Defendant that will perform notice and claim administration duties in accordance with this Agreement.

     1.5.   **"Class Area"** means the list of properties on the attached spreadsheet Exhibit A.

     1.6.   **"Class Counsel"** means Ted Gianaris and Gianaris Trial Lawyers.

     1.7.   **"Class Member"** means a member of the Class.

     1.8.   **"Class Notice"** means the notice of the Settlement that will be provided to the Class Members in accordance with Section 7 of this Agreement, Federal Rule of Civil Procedure 23, and the U.S. Constitution, where such notice will be in substantially the same form as the Class Notice attached as Exhibit B to this Agreement.

     1.9.   **"Court"** means the United States District Court for the Eastern District of Missouri.

     1.10.   **"Defendant"** means SRG Global Coatings, LLC.

     1.11.   **"Effective Date"** means the date on which all opportunities for appellate review of the Final Approval Order have expired or been exhausted without the Final Approval Order having been reversed, vacated, or otherwise overturned in whole or in part.

     1.12.   **"Fairness Hearing"** means the hearing at which the Court will consider whether to give final approval to the Settlement; approve, modify, or deny a petition for an award of

attorneys' fees and expenses; enter the Final Approval Order; and make such other rulings as are contemplated by this Agreement.

1.13.    **"Final Approval Order"** means the Court's order (a) granting final approval to the Settlement; (b) directing that the Agreement be implemented in accordance with its terms; (c) dismissing the Lawsuit with prejudice; (d) ruling that each of the Releasing Parties has expressly, intentionally, fully, finally, and forever released, waived, compromised, settled, and discharged all Released Claims; (e) barring each of the Releasing Parties from asserting any of the Released Claims against the Released Parties; (f) awarding any attorneys' fees, costs, and expenses payable in connection with the Settlement or the Lawsuit; (g) finding that the Class Notice complied with Federal Rule of Civil Procedure 23 and the U.S. Constitution; (h) establishing and approving the settlement fund; and (i) reserving exclusive and continuing jurisdiction over the interpretation, performance, enforcement, and administration of this Agreement and the Court's orders in this Lawsuit; where such order will be substantially the same form as the proposed Final Approval Order attached as Exhibit C to this Agreement.

1.14.    **"Lawsuit"** means the case of *Dorothy Thomure v. SRG Global Coatings, LLC*, No. 4:23-cv-00375-HEA, filed in the United States District Court for the Eastern District of Missouri.

1.15.    **"Net Settlement Fund"**  the portion of the Settlement Fund available for payment to the Settlement Class Members after the payment of attorneys' fees, any tax-related expenses, and other costs and expenses payable from the Settlement Fund.

1.16.    **"Opt Out"** means the choice of a Class Member to exclude himself, herself, or itself from the Class with respect to the settlement and release of claims for monetary relief certified under Federal Rule Civil Procedure 23(b)(3). No Class Member will be entitled to

4

exclude himself, herself, or itself from the Class with respect to the settlement and release of claims for injunctive and declaratory relief certified under Federal Rule of Civil Procedure 23(b)(2), and all Class Members will be bound by the settlement and release of claims for injunctive and declaratory relief.

     1.17.   **"Opt Out Deadline"** means the deadline to Opt Out set by the Court, or if the Court sets no such deadline, seventy (70) days after entry of the Preliminary Approval Order.

     1.18.   **"Objection"** means a challenge to this Agreement or the Settlement asserted by a Class Member pursuant to Section 9 of this Agreement.

     1.19.   **"Objection Deadline"** means the deadline for submitting Objections set by the Court or, if the Court sets no such deadline, seventy (70) days after entry of the Preliminary Approval Order.

     1.20.   **"Party"** means the Plaintiff or the Defendant.

     1.21.   **"Parties"** means the Plaintiff, on behalf of herself and the Class Members, and the Defendant.

     1.22.   **"Permanent Water Solution"** means extending a City of Farmington water mainline to the proximity of each property in the settlement Class Area. SRG will pay the cost to connect each property within the Settlement Class owned by a Releasing Party who agrees, within 90 days of completion of the extension of City of Farmington water mainline, and works with SRG to connect their property to the City water mainline, up to a total cost of $6,000 per home after the City water mainline is available at their property.

     1.23.   **"Person"** means a natural person, corporation, association, limited liability company, partnership, limited partnership, joint venture, affiliate, any other type of private entity, states, counties, municipalities, any other public and quasi-public entity, or their

respective spouses, heirs, predecessors, successors, executors, administrators, representatives, or assigns.

1.24.    **"PFAS"** means, for purposes of this Agreement only, fluorinated organic substance that contains one or more carbon atoms and on which at least one of the hydrogen substituents has been replaced by a fluorine atom. For purposes of this Agreement, the definition of "PFAS" is intended to be as broad and inclusive as possible and includes, without limitation, all per- and poly-fluoroalkyl substances and their chemical precursors and degradants, as well as all products manufactured with or containing such substances, precursors, or degradants.

1.25.    **"Plaintiff"** means Class Representative-Plaintiff Dorothy Thomure.

1.26.    **"Preliminary Approval Order"** means the Court's order (a) granting preliminary approval to the Settlement; (b) approving the Class Notice; (c) certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(2) with respect to all claims for injunctive and declaratory relief; (d) certifying the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) with respect to all claims for monetary relief; (e) appointing Plaintiff as class representative; (f) appointing Class Counsel to represent the Settlement Class; and (g) setting the Opt Out Deadline, the Objection Deadline, the date and time for the Fairness Hearing, and other appropriate deadlines; where such order will be substantially the same form as the proposed Preliminary Approval Order attached as Exhibit D to this Agreement.

1.27.    **"Released Claims"** shall have the meaning set forth in Section 3 of this Agreement.

1.28.    **"Released Parties"** means Defendant and its parents, subsidiaries, divisions, affiliated business entities, predecessors, successors, and all of their agents, employees, officers, directors, partners, and current and former shareholders, owners, members, promoters,

6

representatives, distributors, trustees, assigns, attorneys, insurers, and subrogees, individually or in their corporate or personal capacity.

1.29.   **"Releasing Parties"** means all members of the Settlement Class in the Class Area who do not opt out of the Class Settlement.

1.30.   **"Settlement"** means the settlement and compromise reflected in this Agreement.

1.31.   **"Settlement Fund"** means the fund or account established pursuant to and approved by an order of the Court to resolve and satisfy the Released Claims as a qualified settlement fund within the meaning of 26 C.F.R. § 1.468B-1(a) and (c), at Class Counsel's expense (subject to Court-approved reimbursement from the Settlement Fund), to receive the Total Settlement Payment and make payments authorized by this Agreement.

1.32.   **"Settlement Class" or "Settlement Class Members"** means Class Members that do not Opt Out.

1.33.   **"Settlement Class Allocation Plan"** means the plan for allocating and distributing the Net Settlement Fund to and among the Settlement Class Members.

1.34.   **"SRG"** means SRG Global Coatings, LLC.

1.35.    **"SRG Facility"** means the facility and property located at 2055 Progress Drive, Farmington, St. Francois, Missouri 63640.

1.36.   **"Time to Permanent Water Solution"** means twenty-four (24) months after SRG's receipt of any final required approval or permitting authority by the City of Farmington, the County of St. Francois, or the State of Missouri to implement the Permanent Water Solution. SRG positively affirms it has authorized a contractor to begin the permitting process and will use all due diligence and necessary effort required to complete the permitting process to procure any required final approval and/or permitting authority. Said good faith efforts to attain needed

authority are part of the injunctive relief and important to and material to the injunctive relief. With written notice to SRG, any Releasing Party will within thirty (30) days of a written request, be provided an update and summary of the final approval and/or permitting authority status and efforts and status and efforts for providing a Permanent Water Solution.  The parties agree that this constitutes injunctive relief and that the Settlement Class will be certified under Federal Rule of Civil Procedure 23(b)(2) based on this injunctive relief.

  **1.37.** **"Total Settlement Payment"** means the total payment that the Defendant is to make in accordance with Section 2 of this Agreement.

## 2.  DISTRIBUTION OF THE SETTLEMENT FUND

  2.1. Within forty-five (45) days after the Effective Date, Defendant shall pay or cause to be paid a total of  $3,500,000 into the Settlement Fund.

  2.2. <u>Attorneys' Fees and Expenses.</u> Class Counsel may request an award of attorneys' fees, costs or expenses related to the Lawsuit and the Settlement.

   2.2.1. No later than twenty-one (21) days prior to the Objection Deadline, Class Counsel shall file with the Court any request for an award of attorneys' fees, costs, or expenses related to the Action and the Settlement.

   2.2.2. A decision by the Court to grant less than the requested amount of attorneys' fees, costs, or expenses does not provide grounds for termination or amendment of this Agreement, does not prevent entry of a Final Approval Order, and does not provide grounds for opposing or challenging the final approval of the Settlement.

   2.2.3. Any award of attorneys' fees, costs, or expenses related to the Lawsuit or the Settlement shall be paid solely from the Settlement Fund, and Class Counsel may deduct these amounts from the Settlement Funds upon receipt of thereof.

**2.3.**  <u>Incentive Award to Class Representative</u>. In addition to the payment she is entitled to receive as a member of the Settlement Class, the Plaintiff, as Class Representative, Plaintiff may request, and Defendant will not oppose, an incentive award of $15,000.00, in consideration of her assumption and diligent performance of the duties of Class Representative, and the extensive time and effort she expended in connection with the Lawsuit.

**2.3.1.**  Any such incentive award to Plaintiff as Class Representative related to the Action or the Settlement shall be paid solely from the Settlement Fund.

**2.4.**  <u>Class Administration.</u> In connection with the motion for preliminary approval of the Settlement, Class Counsel shall develop and propose a Settlement Class Payment Plan for approval by the Court. Defendant shall pay the costs of the Class Administrator that have been agreed to by the Parties based on a proposal by the Class Administrator, and Class Counsel Gianaris Trial Lawyers and Ted Gianaris will work with the Class Administrator to oversee the class administration process and members of the Settlement Class.

**2.4.1.**  In no event shall Defendant or its counsel have any liability for the administration of the Settlement Fund or for acts or omissions of the Class Administrator.

**2.5.**  <u>Payments to the Class.</u> The Settlement Class shall receive the balance of the Settlement Fund remaining following: (a) payment of the attorneys' fees, costs, and expenses to Class Counsel pursuant to Paragraph 2.2 above and (b) payment to the Class Representative pursuant to Paragraph 2.3 above. Each Releasing Party's share of the lump sum payment will be paid from the Settlement Fund to the deed holder(s) who will receive payment with a check written to the deed holder(s) in amounts based the Settlement Class Payment Plan.

**2.6.**  The Total Settlement Payment constitutes remediation (as defined in 26 U.S.C. § 162(f)) for the claims alleged by Plaintiff on behalf of herself and the Class Members including

9

the physical injury of PFAS in the urine or blood. No portion of the Total Settlement Payment constitutes a fine, penalty, punitive damages, disgorgement of profits, reimbursement for investigation or litigation costs, or an amount paid in settlement of any claim for any of the foregoing; and if a determination were made to the contrary, the amounts paid would qualify under the exceptions in §§162(f)(2) and (3).

2.7.    The Settlement Fund at all times is intended to be a "qualified settlement fund" within the meaning of United States Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1 and shall be established pursuant to an order of the Court and will be subject to the continuing jurisdiction of Court for the life of the Settlement Fund. Neither the Parties nor the Class Administrator shall take a position in any filing or before any tax authority that is inconsistent with such treatment. Each of the Defendants is a "transferor" within the meaning of United States Treasury Regulation § 1.468B-1(d)(1) to the Settlement Fund. The Class Administrator shall be the "administrator" of the Settlement Fund within the meaning of United States Treasury Regulation § 1.468B-2(k)(3) and, as the administrator, the Class Administrator shall: (a) timely make or join in any and all filings or elections necessary to make the Settlement Fund a qualified settlement fund at the earliest possible date (including, if requested by any of the Defendants, a relation-back election within the meaning of United States Treasury Regulation § 1.468B-1(j)); (b) timely file all necessary or advisable tax returns, reports, or other documentation required to be filed by or with respect to the Settlement Fund; (c) timely pay any taxes (including any estimated taxes, and any interest or penalties) required to be paid by or with respect to the Settlement Fund; and (d) comply with any applicable information reporting or tax withholding requirements imposed by applicable law, in accordance with United States Treasury Regulation § 1.468B-2(l). Any such taxes, as well as all other costs incurred by the

Class Administrator in performing the obligations created by this subsection, shall be paid out of the Settlement Fund. The Defendant shall have no responsibility or liability for paying such taxes and no responsibility to file tax returns with respect to the Settlement Fund or to comply with information -reporting or tax -withholding requirements with respect thereto. Defendant shall provide the Class Administrator with the combined statement described in United States Treasury Regulation § 1.468B-3(e)(2)(ii).

**2.8.** Defendant is making no representations to Class Members concerning any tax consequences or treatment of any allocation or distribution of funds to Class Members pursuant to this Agreement, the Settlement, or the Settlement Class Allocation Plan.

**2.9.** Beyond its obligations to make the Total Settlement Payment, in no event shall Defendant have any liability for any attorneys' fees, costs, expenses, or incentive awards related to the Settlement, aside from Defendant's own attorneys' fees, costs, or expenses.

**3.    DISMISSAL, RELEASE OF CLAIMS, CONSIDERATION, AND RELATED PROVISIONS**

**3.1.** <u>Dismissal of Litigation.</u> Within seven (7) days after the receipt of the Settlement Fund, Releasing Parties and Class Counsel shall execute and file with the Court the Joint Stipulation of Dismissal with Prejudice, attached as Exhibit E, and take any and all necessary actions to ensure that the Lawsuit is timely dismissed in its entirety, with prejudice and without costs or fees. Defendant and its counsel will cooperate with Releasing Parties in securing the dismissal of the Lawsuit as appropriate, including by promptly executing the attached Stipulation and returning a copy of the same to counsel for the Releasing Parties.

**3.2.** <u>Release by the Releasing Parties.</u> Upon the Effective Date, the Releasing Parties shall have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released,

11

waived, compromised, settled, and discharged the Released Parties from any and all past, present, and future claims, actions, causes of action, judgments, verdicts, rights, demands, theories of recovery, damages, losses, injuries, harm, covenants, promises, contracts, agreements, obligations, liabilities, debts, liens, fees, costs, expenses, punitive damages or compensation whatsoever, of whatever nature, kind, or character, including, but not limited to, nuisance, negligence, trespass, property damage, economic harm, medical monitoring, fear of disease, increased risk of disease, and any other non-physical injury or non-death form or category of loss, harm, or injury, whether based upon statute, common law, or regulation, whether in equity or at law, that in any way or to any extent relate to, arise out of, or result from the occurrences alleged in the Lawsuit, or that were or could have been asserted in the Lawsuit, except for personal injury claims. All Parties agree and it is material to this Agreement that Releasing Parties are not settling or releasing any present or future personal injury claims or death claims. The mere presence of PFAS in blood or urine is not considered a personal injury or death claim and cannot be the basis of a personal injury or death claim.

    **3.2.1.** <u>Reservation and Preservation of Personal Injury and Death Claims.</u> Releasing Parties fully reserve any and all present and future personal injury and death claims, excluding the mere presence of PFAS in blood or urine.

    **3.3.** <u>Permanent Water Solution.</u> SRG will provide a Permanent Water Solution within the Time to Permanent Water Solution. If SRG does not provide a Permanent Water Solution to each property within the Class Area owned by a Releasing Party, within the Time to Permanent Water Solution, Plaintiffs will have a claim to enforce SRG to comply with the terms or for further money damages that parties agree will be exclusively subject to binding arbitration pursuant to the rules of the American Arbitration Association. SRG's obligation to provide a

Permanent Water Solution to each property listed on Exhibit A within the Time to Water Solution is contingent on that Releasing Party providing access to his or her property listed on Exhibit A to connect the property to the City water mainline. Each Releasing Party represents that his or her property listed on Exhibit A is in an appropriate condition to connect the property to a City water mainline. The Parties agree that this constitutes injunctive relief, and that the Settlement Class will be certified under Federal Rule of Civil Procedure 23(b)(2) based on this provision of injunctive relief.

      **3.4.** <u>Alternative Water Solution.</u> SRG agrees to continue to provide an alternative water solution in the form of bottled water to the Releasing Parties for up to twenty-four (24) months after the entry of a final approval order of the Class Settlement by the Court in this lawsuit or up to three months after the Permanent Water Solution, whichever is later. The Parties agree that this constitutes injunctive relief, and that the Settlement Class will be certified under Federal Rule of Civil Procedure 23(b)(2) based on this provision of injunctive relief and the provision of a Permanent or other water solution.

      **3.5.** <u>No Waiver of Defenses.</u> Defendant does not waive or forfeit any defenses or arguments that it could assert as to any claims or causes of action that are outside the definition of "Released Claims."

      **3.6.** <u>Exclusive Remedy.</u> The relief provided for in this Agreement shall be the sole and exclusive remedy for all Releasing Parties with respect to any Released Claims, and the Released Parties shall not be subject to liability or expense of any kind with respect to any Released Claims other than as set forth in this Agreement.

      **3.6.1.** <u>Covenant Not to Sue.</u> Releasing Parties shall forever refrain from instituting, maintaining, prosecuting, or continuing any suit, action, or proceeding against the

Released Parties with respect to the Released Claims. Releasing Parties fully reserve any and all present and future personal injury and death claims, excluding the mere presence of PFAS in blood or urine.

**3.7.** <u>Waiver of Statutory Rights</u>.

**3.7.1.** To the extent the provisions apply, the Releasing Parties expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

**3.7.2.** To the extent the provisions apply, the Releasing Parties likewise expressly, knowingly, and voluntarily waive the provisions of Section 20-7-11 of the South Dakota Codified Laws, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

**3.7.3.** To the extent the laws apply, the Releasing Parties expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred upon them by, Section 1542 of the California Civil Code, Section 20-7-11 of the South Dakota Codified Laws, and all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, the Releasing Parties acknowledge

14

that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe to exist with respect to the Released Claims, but that it is their intention to accept and assume that risk and fully, finally, and forever release, waive, compromise, settle, and discharge all of the Released Claims against Released Persons. The release thus shall remain in effect notwithstanding the discovery or existence of any additional or different claims or facts.

    **3.8.**   <u>Reservation of SRG's Claims for Contribution or Cost Recovery.</u> SRG expressly reserves all claims for contribution or cost recovery for its own damages from any other person, firm or corporation including, without limitation, PFAS compound manufacturers or suppliers or other users. SRG will not seek contribution or cost recovery or its own damages from any Releasing Party. This provision has no effect on the Releasing Parties' right to pursue legal actions against any entity other than the Released Parties.

**4.**    **NO ADMISSION OF WRONGDOING OR LIABILITY**

    **4.1.**   Defendant does not admit or concede any liability or wrongdoing, acknowledge any validity to the claims asserted in the Lawsuit, acknowledge that certification of a Class is appropriate to any claim, or acknowledge any weakness in the defenses asserted in the Lawsuit, and nothing in this Agreement, the Preliminary Approval Order, or the Final Approval Order shall be interpreted to suggest anything to the contrary.

    **4.2.**   Nothing in this Agreement, any negotiations, statements, communications, proceedings, filings, or orders relating thereto, or the fact that the Parties entered the Agreement and settled the Lawsuit shall be construed, deemed, or offered as an admission or concession by any of the Parties or Settlement Class or as evidentiary, impeachment, or other material available

for use or subject to discovery in any suit, action, or proceeding (including in this Lawsuit),

except: (a) as required or permitted to comply with or enforce the terms of this Agreement, the

Preliminary Approval Order, or the Final Approval Order, or (b) in connection with a defense

based on *res judicata*, claim preclusion, collateral estoppel, issue preclusion, release, or other

similar theory asserted by Defendant.

## 5.    CLASS CERTIFICATION

**5.1.**    In a motion for preliminary approval of the Settlement, and solely for purposes of

the Settlement, Plaintiff will propose class certification with respect to all claims for injunctive

and declaratory relief under Federal Rule of Civil Procedure 23(b)(2) and with respect to all

claims for monetary relief under Federal Rule of Civil Procedure 23(b)(3), with Plaintiff as the

proposed class representative, which Defendant will not oppose.

**5.2.**    Defendant agrees to class certification solely on a settlement basis and would

otherwise dispute the allegations on class certification in the Lawsuit Plaintiff is seeking, and

Defendant agrees to class certification in this Lawsuit solely based on the common issues related

to members of this Settlement Class and the common injunctive relief provided to all Class

members under the terms of this Agreement, and not based on allegations related to any action or

inaction by SRG.

**5.3.**    If this Agreement is terminated or the Court (or an appellate court) refuses or

declines to approve the Settlement as proposed by Plaintiff, (a) Defendant shall retain all of the

rights to oppose class certification that it had prior to execution of this Agreement; and (b)

nothing in this Agreement, the Settlement, or the orders, filings, proceedings, or negotiations

related to this Agreement or the Settlement may be used as evidence or argument concerning

whether the Lawsuit (or any other lawsuit) may be certified as a class action.

**6.    CAFA NOTICE**

**6.1.**    Not later than ten (10) days after the Preliminary Approval Order is issued by the Court, Defendant will provide CAFA Notice to the appropriate Federal and State officials, as required by the Class Action Fairness Act. The notice to be provided is attached as Exhibit F. The Parties agree that this notice constitutes the best notice practicable under the circumstances, and fully complies with the provisions set forth in the Class Action Fairness Act, 28 U.S.C. § 1715 and any other applicable law.

**7.    CLASS NOTICE**

**7.1.**    In the motion for preliminary approval, the Plaintiffs shall ask the Court to approve Class Notice in the form attached as Exhibit B to this Agreement for dissemination through the means described in the Class Notice plan attached as Exhibit G to this Agreement.

**7.2.**    Unless the Court orders otherwise, the Class Notice shall fairly and adequately: (a) describe the terms of the Agreement and the Settlement; (b) give notice of the time and place of the Fairness Hearing; (c) describe how a Class Member may submit an Objection and the deadline for doing so; (d) describe how a Class Member may Opt Out of the Settlement with respect to the claims certified under Rule 23(b)(3) and the deadline for doing so; and (e) otherwise satisfy the notice requirements of Federal Rules of Civil Procedure 23(e) and the U.S. Constitution.

**7.3.**    Unless the Court orders otherwise, and in accordance with the Class Notice, the Class Administrator shall commence issuing the Class Notice to members of the Settlement Class no later than twenty-one (21) days after entry of the Preliminary Approval Order.

**7.4.** The costs of Class Notice, including the related fees, costs, and expenses of the Class Administrator, shall be paid by Defendant, in addition to the  $3,500,000 to be paid into the Settlement Fund, either directly or through reimbursement for any payments advanced by Class Counsel for such costs.

## 8.     OPT OUTS

**8.1.** A Class Member may Opt Out only to the extent the Class is certified under Federal Rule of Civil Procedure 23(b)(3) and only with respect to claims for monetary relief and the release of any claims for monetary relief.

**8.2.** A Class Member may not Opt Out to the extent the Class is certified under Federal Rule of Civil Procedure 23(b)(2) or with respect to claims for injunctive or declaratory relief , and thus submits to the jurisdiction of the Court and shall be bound by the terms of this Agreement and by all orders and judgments in the Lawsuit with respect to all claims for injunctive or declaratory relief to extend a City of Farmington water mainline to the proximity of each property in the settlement Class Area and provision of bottled water to properties in the settlement Class Area and will be bound by the release of all such claims.

**8.3.** A Class Member may Opt Out by submitting to the Class Administrator a timely and valid request to Opt Out postmarked on or before the Opt Out Deadline.

**8.4.** Any Class Member that submits a timely and valid Opt Out request shall not (a) be bound by any orders or judgments entered into the Lawsuit to the extent that the orders or judgments apply to the Class as certified under Federal Rule of Civil Procedure 23(b)(3), claims for monetary relief, or the release of claims for monetary relief; (b) be entitled to any of the relief or other benefits provided under this Agreement with respect to the Class as certified under Federal Rule of Civil Procedure 23(b)(3), claims for monetary relief, or the release of claims for

18

monetary relief; (c) gain any rights by virtue of this Agreement with respect to the Class as certified under Federal Rule of Civil Procedure 23(b)(3), claims for monetary relief, or the release of claims for monetary relief; or (d) be entitled to submit an Objection with respect to the Class as certified under Federal Rule of Civil Procedure 23(b)(3), claims for monetary relief, or the release of claims for monetary relief.

8.5.    Any Class Member that does not submit a timely and valid Opt Out request submits to the jurisdiction of the Court and shall be bound by the terms of this Agreement and by all orders and judgments in the Action, including with respect to the Class as certified under Federal Rule of Civil Procedure 23(b)(3), claims for monetary relief, and the release of claims for monetary relief.

8.6.    To be timely and valid, an Opt Out request must be postmarked on or before the Opt Out Deadline and must include (a) the full name, current address, and telephone number of the Class Member; (b) a statement of the facts that make the sender a Class Member; (c) a statement requesting exclusion from the Class as certified under Rule 23(b)(3); and (d) the signature of the Class Member.

8.7.    No "mass" of "class" Opt Out requests shall be valid, and no Person may submit an Opt Out request on behalf of any Person other than himself, herself, or itself.

8.8.    Any Class Member that submits an Opt Out request may revoke the request by mailing to the Class Administrator a statement of revocation postmarked no later than forty-two (42) days before the Fairness Hearing.

8.9.    No later than thirty (30) days before the Fairness Hearing, the Class Administrator shall furnish the Parties with a final list of all Class Members that have submitted timely and valid Opt Out requests.

**8.10.**   For the Settlement Class under Federal Rule of Civil Procedure 23(b)(3), SRG agrees to a five percent (5%) Opt-Out rate without reducing the Total Settlement Payment. If there is an Opt-Out rate above five percent (5%) each one percent (1%) increment of Opt Outs above five percent (5%) will have a corresponding one percent (1%) reduction in the Total Settlement Payment to be made by Defendant to the Settlement Fund pursuant to Section 2 of this Agreement.

**8.10.1.** If the Opt-Out rate causes the participation rate to be less than eighty percent (80%), Defendant has the unilateral right to terminate this Agreement pursuant to Section 15 of this Agreement.

8.10.1.1.   The participation rate shall be determined by the number of properties  on Exhibit A divided by the number of properties on Exhibit A that do not Opt Out.


**9.    OBJECTIONS**

**9.1.**   A Class Member may make an Objection by filing with the Court a statement of Objection on or before the Objection Deadline and serving the Objection on Class Counsel and counsel for Defendant.

**9.2.**   To be timely and valid, an Objection must be filed on or before the Objection Deadline and must include (a) the full name, current address, and telephone number of the Class Member; (b) a statement of the facts that make the Class Member a member of the Class; (c) a statement describing all of the Class Member's challenges to this Agreement or the Settlement and the reason for those objections; (d) all of the papers and evidence the Class Member intends to submit in support of those challenges; (e) a statement of whether the Class Member intends to

20

appear at the Fairness Hearing; (f) the signature of the Class Member; (g) three dates at least ten (10) days before the Fairness Hearing on which the Class Member will be available to be deposed by lawyers for the Parties; (h) the caption of each case in which the Class Member or the counsel representing the Class Member have objected to a class action settlement within the five years preceding the date of the filing of the objection in this case and a copy of all orders related to or ruling upon those objections; and (i) all agreements that relate to the objection in this case or the process of objecting, whether written or verbal, between or among the Class Member, their counsel, and/or any other person or entity.

**9.3.**    No "mass" or "class" Objections shall be valid, and no Class Member may submit a statement of Objection on behalf of any other Class Member.

**9.4.**    Unless the Court orders otherwise, only Class Members that include in their Objection a statement that they intend to appear at the Fairness Hearing shall have the right to present their Objection orally at the Fairness Hearing.

**9.5.**    A Class Member that does not submit a timely and valid Objection shall have waived, and shall be foreclosed from making, any challenge to this Agreement or the Settlement in the Action or any other proceeding.

**10.    CLAIM FORM**

**10.1.**    Those members of the Settlement Class who do not opt out of the Settlement shall complete the Claim Form ("Claim Form" attached as Exhibit H) identifying the deedholders and deedholders' spouses for the property within the Class Area. Class Counsel shall use their best efforts to obtain either a claim form or an Opt-Out notice from each member of the Class.

**11.    FINAL APPROVAL**

**11.1.**    Unless the Court orders otherwise, no later than twenty-one (21) days before the

21

Fairness Hearing, Plaintiff shall file, and Defendant will not oppose, a motion for final approval of the Settlement and entry of the Final Approval Order.

**11.2.**    Plaintiff shall provide Defendant with a draft of the motion for final approval at least seven (7) days before it is filed.

**11.3.**    At the Fairness Hearing, the Parties will use their reasonable best efforts to support approval of the Settlement and entry of the requested Final Approval Order.

**11.4.**    If the Court enters the requested Final Approval Order without material change, the Parties will use their reasonable best efforts to defend the Final Approval Order from challenge on appeal or otherwise.

**11.5.**    If the Court enters the requested Final Approval Order without material change, no Party will institute, support, or encourage any appeal from the Final Approval Order.

## 12.    REPRESENTATIONS AND WARRANTIES

**12.1.**    Plaintiff represents and warrants to Defendant as follows:

**12.1.1.** Plaintiff is a Class Member.

**12.1.2.** Plaintiff has received legal advice from Class Counsel regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

**12.1.3.** No portion of any of the Released Claims possessed by Plaintiff and no portion of any relief under this Agreement to which Plaintiff may be entitled has been assigned, transferred, or conveyed by or for Plaintiff to any other Person, except pursuant to any contingency fee agreement with Class Counsel.

**12.1.4.** Plaintiff is not relying on any statement, representation, omission, inducement, or promise by Defendant, their agents, or their representatives, except those expressly

22

stated in this Agreement.

**12.1.5.**  Plaintiff, through Class Counsel, has investigated the law and facts pertaining to the Released Claims and the Settlement.

**12.1.6.** Plaintiff has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having consulted with Class Counsel or other attorneys.

**12.1.7.** Plaintiff has all necessary competence and authority to enter into this Agreement on her own behalf and on behalf of the Class.

**12.1.8.** Plaintiff will not Opt Out or file an Objection.

**12.2.**    Class Counsel represents and warrants to Defendants as follows:

**12.2.1.** Class Counsel believes the Settlement is fair, reasonable, adequate, and beneficial to each Class Member and that participation in the Settlement would be in the best interests of each Class Member.

**12.2.2.** Class Counsel does not currently represent any client or clients that it is aware plan to, or are considering whether to, Opt Out, file an Objection, or otherwise challenge the Settlement.

**12.2.3.** Class Counsel recognizes the risk that they could have a conflict of interest if they represented (directly or indirectly) any client in connection with an effort to Opt Out, file an Objection, or otherwise challenge the Settlement.

**12.2.4.** Because Class Counsel believes that the Settlement is in the best interests of each Class Member, Class Counsel will not solicit, or assist others in soliciting, Class Members to Opt Out, file an Objection, or otherwise challenge the Settlement.

**12.2.5.** Class Counsel has all necessary authority to enter into and execute this Agreement

on behalf of Plaintiffs and the Class.

**12.2.6.** Plaintiff has approved and agreed to be bound by this Agreement.

**12.2.7.** The representations in Section 12.1 of this Agreement are true and correct to the best of Class Counsel's knowledge.

**12.3.** Defendant represents and warrants to Plaintiff as follows:

**12.3.1.** Defendant has received legal advice from its attorneys regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

**12.3.2.** Defendant is not relying on any statement, representation, omission, inducement, or promise by Plaintiffs, Class Members, or Class Counsel, except those expressly stated in this Agreement.

**12.3.3.** Defendant, with the assistance of its attorneys, has investigated the law and facts pertaining to the Released Claims and the Settlement.

**12.3.4.** Defendant has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having consulted with its attorneys.

**12.3.5.** Defendant has all necessary authority to enter into this Agreement, has authorized the execution and performance of this Agreement, and has authorized the Person signing this Agreement on its behalf to do so.

## 13.    LIENS AND MEDICARE OBLIGATIONS

**13.1.**    Any liens or subrogation interests as to any damage to real property or other property of a Settlement Class member shall be the responsibility of that Settlement Class member. If a third party attempts to enforce a lien against the Released Parties, that Settlement

24

Class member will defend, indemnify, and hold harmless up to the consideration paid that Settlement Class Member for the Release, for any claims, causes of action, or demands from the third party.

**13.2.**    Any liens or subrogation interests as to any costs, expenses, or fees incurred by a Settlement Class member in connection with any alleged exposure to PFAS or any other contaminants shall be the responsibility of that Settlement Class member. If a third party attempts to enforce a lien against the Released Parties, that Settlement Class member will defend, indemnify, and hold harmless, up to the consideration paid that Settlement Class Member for the Release, for any claims, causes of action, or demands from the third party.

**13.3.**    Nothing in this Agreement is intended to create or give rise to any liens or subrogation claims not otherwise provided by law or contract.

**13.4.**    Due to the nature of the claims at issue in this Lawsuit and the Released Claims, the Parties agree that the Settlement does not give rise to any reporting requirements under Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, and therefore that no party will make any such report.

**13.5.**    The Parties have sought to draft this Settlement to avoid any impacts to the right of any public or private program (e.g. Medicare) or to Settlement Class Members' rights thereunder. However, by participating, Settlement Class Members acknowledge that (a) the Settlement could impact, limit, or preclude needs-based benefits arising out of the allegations in the lawsuit, and (b) they want to proceed with the Settlement and voluntarily waive any and all claims against Defendant for denial of Medicare benefits related to the Settlement. It is understood that the intent of this Agreement is that the Releasing Parties will protect, defend, and hold the Released Parties harmless from any future or further payments or exposure with regard

25

to the matters addressed in this Settlement, including but not limited to claims for reimbursement of public or private medical insurance benefits paid on behalf of the Releasing Parties. The Releasing Parties voluntarily waive any and all claims of any nature against Defendant related to any effort by Medicare or Medicare Advantage Organization to demand payment of covered medical expenses that are asserted to be related to this Settlement, including but not limited to a private cause of action under 42 U.S.C. § 1395y(b)(3)(A). The Parties have considered Medicare's interest in any potential Medicare covered medical expenses occurring before or after the Effective Date. The Parties are satisfied that no allocation for expenses to protect Medicare's interest now or in the future is necessary and will not allocate any amount of the proceeds of this Settlement for past or future medical expenses.

## 14.    AMENDMENT OF AGREEMENT

**14.1.**    The Parties agree to amend this Agreement by mutual agreement for any reason at any time.

**14.2.**    Prior to entry of the Final Approval Order, this Agreement may be amended only by a writing executed by all Parties.

**14.3.**    After entry of the Final Approval Order, this Agreement may be amended only by a writing executed by all Parties and approved by the Court.

## 15. TERMINATION OF AGREEMENT

**15.1.**    Any of the Parties may terminate this Agreement if any of the following events happen: (a) the Court declines to approve any material part of the Settlement; (b) the Court declines to approve or changes a material term of the requested Preliminary Approval Order or the requested Final Approval Order; (c) an appellate court reverses, vacates, or otherwise overturns the Final Approval Order in whole or in part; or (d) another of the Parties

materially breaches this agreement before the Effective Date and fails to promptly cure the breach after receiving written notice of the breach; provided, however, that none of the Parties may terminate this Agreement because the Court or any appellate court awards less than the requested amount of attorneys' fees, costs, and expenses.

**15.2.**    If the Opt-Out rate causes the participation rate to be less than eighty percent (80%), Defendant has the unilateral right to terminate this Agreement by delivering written notice of termination to Class Counsel.

**15.2.1.** The participation rate shall be determined by the number of properties on Exhibit A divided by the number of properties on Exhibit A that do not Opt Out.

**15.3.**    In order to exercise a right to terminate this Agreement, a Party must deliver written notice of termination to counsel for all other Parties within ten (10) days after the later of the event creating the right to terminate or the Party learning of the event creating the right to terminate, unless that deadline is extended by written consent of counsel for all Parties.

**15.4.**    If a Party exercises a right to terminate this Agreement, (a) the Parties shall have thirty (30) days to resume settlement negotiations and determine if the Parties can reach an amended agreement; (b) all deadlines under this Agreement shall be stayed for the duration of the negotiations; (c) the Parties shall jointly request a stay of all Court deadlines for the duration of the negotiations; and (d) the Parties shall jointly advise the Court of the status of this Agreement or any amendment to Agreement within seven (7) days after the conclusion of the thirty-day negotiation period.

**15.5.**    Unless the Parties agree otherwise in writing, thirty-one (31) days after a Party exercises a right to terminate this Agreement:

**15.5.1.** The Agreement (except for Sections 4.1, 4.2, 5.2, 5.3,  15.1-15.5, 16.1, 16.2, 17.1-

27

17.18) shall become null and void and of no further force and effect.

**15.5.2.** The Action shall resume as if the Parties never entered into the Agreement.

**15.5.3.** The Parties shall jointly move to vacate any orders entered in connection with the Settlement.

**15.5.4.** The Parties shall jointly move for the entry of a scheduling order establishing procedures and deadlines for, among other things, discovery, class certification motions and hearing, dispositive motions, and trial;

**15.5.5.** The Agreement (except for Sections 4.1, 4.1, 5.2, 5.3,  15.1-15.5, 16.1, 16.2, 17.1-17.18), any negotiations, statements, communications, or proceedings relating thereto, and the fact that the Parties agreed to the Agreement shall not be offered as an admission or concession by any of the Parties or Class Members or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including this Lawsuit).

**15.6.**   If a Party breaches the Agreement after the Effective Date, none of the Parties may terminate the Agreement and any aggrieved Parties may seek relief only from the breaching Party. In no event shall any non-breaching Party have any liability arising out of or related to a breach of the Agreement by any other Party.

**16.**    **CONFIDENTIALITY, PUBLICITY, AND NON-DISPARAGEMENT**

**16.1.**    The Parties, Class Counsel, counsel for Defendants, and the Class Administrator shall keep strictly confidential and not disclose to any third party any non-public information received during litigation of the Lawsuit or negotiation or implementation of the Settlement.

**16.2.**    No later than one-hundred-eighty (180) days after the Effective Date, Class Counsel, on behalf of Plaintiffs and the Class, and the Class Administrator shall return or destroy

(and certify in writing that they have destroyed upon a request to so certify) any of Defendants' confidential documents produced in connection with the Action, settlement discussions, or the negotiation or performance of this Agreement.

**16.3.**    Class Counsel shall issue no publicity, press release, or other public statement regarding the Settlement unless jointly agreed to in writing by all Parties. Each Party and their counsel jointly and severally agree that they will not proactively make or publish any communication, or proactively instigate, assist, or participate in the making or publication of any communication, regarding this Agreement or the Lawsuit unless jointly agreed to in writing by all Parties. If contacted for a statement, each Party and their counsel jointly and severally agree that they will not make or publish any communication (whether written or oral), whether to any current or former employee of either Party, the press or other media, or any other business entity or third party, that would disparage or harm the other Party in their business or personal reputation  (whether or not such communication legally constitutes libel or slander). However, nothing in this provision shall limit (a) Defendant's ability to provide information about the Settlement to its employees, accountants, lawyers, insurers, customers, shareholders, or other stakeholders or in accordance with legal requirements (including the rules of the securities exchanges); (b) Plaintiff's or Class Members' ability to provide information about the Settlement to their accountants, lawyers, or insurers to Class Members, or in accordance with legal requirements; or (c) Class Counsel's ability to provide information about the Settlement to Class Members (including through Class Counsel's website) or in accordance with legal requirements.

## 17.    MISCELLANEOUS

**17.1.**    <u>Arbitration.</u> The Parties agree that any claim or cause of action for injunctive relief based on this Agreement regarding the Permanent Water Solution will be exclusively

subject to binding arbitration pursuant to the rules of the American Arbitration Association.

**17.2.**  <u>Venue and Jurisdiction</u>. For all other non-injunctive relief based on this Agreement regarding the Permanent Water Solution, the United States District Court for the Eastern District of Missouri shall retain jurisdiction over the Parties and Class Members to interpret, implement, administer, and enforce the terms of this Agreement and resolve any dispute regarding this Agreement, the Settlement, the Preliminary Approval Order, or the Final Approval Order. All proceedings related to this Agreement, the Settlement, the Preliminary Approval Order, or the Final Approval Order shall be initiated and maintained in the United States District Court for the Eastern District of Missouri.

**17.3.**  <u>Choice of Law.</u> This Agreement shall be governed and interpreted according to the laws of the State of Missouri.

**17.4.**  <u>No Other Pending Claims.</u> Releasing Parties agree and represent that they have no other pending legal actions or claims against the Released Parties, including in any court, arbitration forum, governmental or administrative forum or agency, or other dispute resolution forum that are in any way related to the Lawsuit or the allegations described therein.

**17.5.**  <u>Entire Agreement.</u> This Agreement represents the entire agreement between the Parties, and it supersedes all prior and contemporaneous oral and written agreements and discussions among them on the subject matter (including any aspect of the draft Term Sheet partially negotiated between the Parties).  The Settlement is not subject to any condition, representation, warranty, or inducement not expressly provided for herein, and there exist no collateral or oral agreements, terms, representations, warranties, promises, conditions, understandings, inducements, or covenants, oral or otherwise, between the Parties, Class

Counsel, Defendant, or counsel for Defendant relating to the subject Matter of the Agreement that supersede, supplement, or that are not incorporated into this Agreement.

17.6.    Construction. This Agreement was drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any of the Parties based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by one of the Parties.

17.7.    Captions. Any captions, titles, headings, or subheadings in this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

17.8.    Deadlines. If the last date for the performance of any action required or permitted by this Agreement falls on a Saturday, Sunday, or Court holiday, that action may be performed on the next business day as if it had been performed within the time period provided for performance of the action.

17.9.    Reasonable Extensions. Unless the Court orders otherwise, the Parties may agree in writing to any reasonable extensions of time to carry out any of the provisions of this Agreement.

17.10.   Notices. Any notice, demand, or other communication under this Agreement (other than the Class Notice) shall be in writing and shall be deemed duly given if it is addressed to the intended recipient as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed email, or delivered by reputable express overnight courier:

To Plaintiffs or Class Members:

Ted. N. Gianaris
Gianaris Trial Lawyers, LLC

31

One Court Street, Alton, IL 62002

<u>To SRG Global Coatings, LLC</u>:

Shannon Harris
Chief Counsel
Atlanta GP Center
133 Peachtree St. NE
Atlanta, GA 30303

Any notice required to be sent to the <u>Class Administrator</u> shall be delivered to its official business address.

**17.11.**  <u>Waiver</u>. The provisions of this Agreement may be waived only by written agreement signed by the waiving party. The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach of this Agreement.

**17.12.**  <u>Duty to Cooperate</u>. The Parties shall cooperate in good faith to take all actions reasonably necessary to effectuate this Agreement.

**17.13.**  <u>Severability</u>. The provisions of this Agreement are not severable, except as provided in the Agreement.

**17.14.**  <u>Third-Party Beneficiaries</u>. This Agreement does not create any third-party beneficiaries, except Settlement Class Members and the Released Persons other than Defendants, who are intended third-party beneficiaries.

**17.15.**  <u>No Liability</u>. No Person shall have any claim against any Plaintiffs, Class Members, Class Counsel, Released Persons, counsel for Defendants, or the Class Administrator based on actions that any Plaintiffs, Class Members, Class Counsel, Released Persons, counsel for Defendants, or the Class Administrator were required or permitted to take under this

Agreement, the Preliminary Approval Order, or the Final Approval Order. No Person shall have any claim against any Released Persons or counsel for Defendants related to administration of the Settlement. No Person shall have any claim against Plaintiffs, Class Counsel, or the Class Administrator related to the administration of the Settlement (including making payments to Class Members), except for in the presence of proven willful misconduct.

**17.16.** Force Majeure. The failure of any Party to perform any of its obligations or the delay of a Party to perform any of its obligations regarding the Permanent Water Solution may constitute a breach of this Agreement. However, a Party is not precluded from claiming as a defense to a claim against it for failure to perform its obligations or a delay in its obligation that such failure is occasioned in whole or in part by Acts of God, fires, accidents, pandemics, or other natural disasters, interruptions, or delays in communications or transportation, labor disputes or shortages of material or supplies, governmental laws, rules or regulations of other governmental bodies or tribunals, acts or failures to act of any third parties, or any other circumstances or causes beyond the reasonable control of that Party. In addition, if any member of the Settlement Class refuses to cooperate with SRG in executing a Permanent Water Solution by refusing an easement on their property and this materially changes SRG's plan to complete the Permanent Water Solution and/or prevents completion of the Permanent Water Solution, and SRG makes all necessary good faith efforts to gain said permission and/or to work around the lack of said permission, then SRG is not precluded from claiming this as a defense to a cause of action to enforce the Permanent Water Solution.

**17.17.** Binding Nature. This Agreement shall be binding upon and inure to the benefit of the Parties, the Class Members, and their respective agents, employees, representatives, heirs, executors, administrators, successors, and assigns.

**17.18.** <u>Execution in Counterparts.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, all parties have read and understood the terms and conditions of this Agreement, agree to be bound by all of its provisions, and have executed this Agreement on the date shown by their signatures below.

[Remainder of Page Intentionally Blank]

SO AGREED:

**PLAINTIFF DOROTHY THOMURE**

Dorothy Thomure, individually and on behalf
of all others similarly situated

February 26, 2025
Dated

```
ANDRE ONG
Notary Public, Notary Seal
State of Missouri
St. Francois County
Commission # 05692840
My Commission Expires 06/15/2025
```

**CLASS COUNSEL**

Counsel for Settlement Class

February 27, 2025
Dated

**DEFENDANT SRG GLOBAL COATINGS,
LLC**

SRG Global
Michael Lee
President

Dated

35

SO AGREED:


**PLAINTIFF DOROTHY THOMURE**


_____                    _____
Dorothy Thomure, individually and on behalf          Dated
of all others similarly situated




**CLASS COUNSEL**


_____                    _____
Counsel for Settlement Class                         Dated




**DEFENDANT SRG GLOBAL COATINGS, LLC**

_____                    _02-27-2025_
SRG Global                                           Dated
Michael Lee
President

35

# EXHIBIT A

# EXHIBIT A

| Property Address | Parcel ID |
|---|---|
| 4054 221 HWY | 14-10-02-00-000-0045.00 |
| 4060 4066 221 HWY | 14-10-02-00-000-0047.00 |
| 4072 221 HWY | 14-10-02-00-000-0048.00 |
| 4078 221 HWY | 14-10-02-00-000-0049.00 |
| 4084 4114 221 HWY | 14-10-02-00-000-0052.00 |
| 3377 DELASSUS RD | 14-10-02-00-000-0054.00 |
| 3370 DELASSUS RD | 14-10-02-00-000-0056.01 |
| 1817 DOUBET RD | 14-10-02-00-000-0072.00 |
| 1825 DOUBET RD | 14-10-02-00-000-0073.01 |
| 1851 DOUBET RD | 14-10-02-00-000-0074.00 |
| 3260 PINE ST | 14-10-02-00-000-0076.00 |
| 3248 PINE ST | 14-10-02-00-000-0076.03 |
| [3347] DELASSUS RD | 14-10-02-03-001-0001.00 |
| 4022 221 HWY | 14-10-02-03-002-0001.01 |
| 4061 3RD ST | 14-10-02-03-003-0001.00 |
| 3317 DELASSUS RD | 14-10-02-03-005-0001.00 |
| 4079 THIRD ST | 14-10-02-03-005-0002.00 |
| 4085 4091 3RD ST | 14-10-02-03-005-0003.00 |
| 3287 DELASSUS RD | 14-10-02-03-006-0001.00 |
| 4075 SECOND ST | 14-10-02-03-006-0002.00 |
| 4087 SECOND ST | 14-10-02-03-006-0003.00 |
| 3281 DELASSUS RD | 14-10-02-03-006-0004.00 |
| 3280 DELASSUS Rd | 14-10-02-03-009-0001.00 |
| 3286 DELASSUS Rd | 14-10-02-03-009-0001.00 |
| DELASSUS RD Lots 16-18 Block 58 | 14-10-02-03-009-0002.00 |
| 4141 SECOND ST | 14-10-02-03-010-0002.00 |
| 3244 DELASSUS RD | 14-10-02-03-011-0001.00 |
| 3262 DELASSUS RD | 14-10-02-03-011-0001.02 |
| 4009 OVERALL RD | 14-10-02-03-011-0001.03 |
| Overall Rd | 14-10-02-03-012-0002.00 |
| 4037 OVERALL RD | 14-10-02-03-012-0002.02 |
| 4013 OVERALL RD | 14-10-02-03-012-0002.03 |
| 3245 PINE ST | 14-10-02-03-012-0004.00 |
| 2010 SPRUCE ST | 14-20-03-04-003-0002.00 |
| 4033 FLEMING ST | 14-10-11-00-000-0001.00 |
| 4033 FLEMING ST | 14-10-11-00-000-0001.07 |
| 3249 PINE ST | 14-10-11-00-000-0001.09 |
| 3245 PINE ST | 14-10-11-00-000-0001.10 |
| 4074 FLEMING ST | 14-10-11-00-000-0005.00 |
| 4073 PINE ST | 14-10-11-00-000-0009.00 |
| 3990 3984 221 HWY | 14-20-03-00-000-0024.00 |

# EXHIBIT A

| Property Address | Parcel ID |
|---|---|
| 4038 SECOND ST | 14-20-03-00-000-0026.00 |
| 221 HWY | 14-20-03-00-000-0030.00 |
| 3854 221 HWY | 14-20-03-00-000-0030.01 |
| 3850 221 HWY | 14-20-03-00-000-0030.04 |
| 4000 221 HWY | 14-20-03-04-001-0006.00 |
| 4013 3RD ST | 14-20-03-04-001-0007.00 |
| 4019 3RD ST | 14-20-03-04-001-0008.00 |
| 4031 3RD ST | 14-20-03-04-001-0010.00 |
| 3285 CHESTNUT ST | 14-20-03-04-002-0001.00 |
| 4063 2ND ST | 14-20-03-04-002-0002.00 |
| 4043 4045 2ND ST | 14-20-03-04-002-0003.00 |
| 4042 3RD ST | 14-20-03-04-002-0004.00 |
| 4048 3RD ST | 14-20-03-04-002-0005.00 |
| 4050 SECOND ST | 14-20-03-04-003-0001.00 |
| 3225 DELASSUS RD | 14-20-03-04-003-0003.00 |
| 4062 SECOND ST | 14-20-03-04-003-0004.00 |
| 4074 SECOND ST | 14-20-03-04-004-0001.00 |
| 3229 3235 DELASSUS RD | 14-20-03-04-004-0002.00 |
| 3241 DELASSUS RD | 14-20-03-04-004-0003.00 |
| 3243 DELASSUS RD | 14-20-03-04-004-0004.00 |
| 3251 DELASSUS RD | 14-20-03-04-004-0005.00 |
| 3263 DELASSUS RD | 14-20-03-04-004-0006.00 |
| 4080 2ND ST | 14-20-03-04-004-0007.00 |
| DELASSUS RD | 14-20-03-04-005-0001.00 |
| DELASSUS RD | 14-20-03-04-005-0002.01 |
| Fleming St | 14-20-03-04-006-0001.00 |
| 3935 Fleming St | 14-20-03-04-006-0002.00 |
| 3973 FLEMING ST | 14-20-03-04-007-0001.00 |
| Fleming St | 14-20-03-04-007-0002.00 |
| 4027 FLEMING ST | 14-20-10-00-000-0001.00 |
| 4021 Fleming St | 14-20-10-00-000-0002.00 |
| 4021 Fleming St | 14-20-10-00-000-0002.01 |
| 3222-3224 DELASSUS RD | 14-20-10-00-000-0003.00 |
| 3167 DELASSUS RD | 14-20-10-00-000-0004.00 |
| DELASSUS RD | 14-20-10-00-000-0005.00 |
| 3166 DELASSUS RD | 14-20-10-00-000-0008.00 |
| 4032 FLEMING ST | 14-20-10-00-000-0009.00 |
| 4050 FLEMING ST | 14-20-10-00-000-0010.00 |
| 4056 FLEMING ST | 14-20-10-00-000-0011.00 |
| 4066 FLEMING ST | 14-20-10-00-000-0013.00 |
| 4074 FLEMING ST | 14-20-10-00-000-0014.00 |
| 4072 PINE ST | 14-20-10-00-000-0015.00 |

# EXHIBIT A

| Property Address | Parcel ID |
|---|---|
| 3098 DELASSUS RD | 14-20-10-00-000-0015.02 |
| 3100 DELASSUS RD | |
| 3111 DELASSUS RD | 14-20-10-00-000-0016.00 |
| 3304 3316 DELASSUS RD | 14-10-02-03-007-0001.00 |
| 3113 DELASSUS RD | 14-20-10-00-000-0017.00 |
| Fleming St | 14-20-10-00-000-0005.02 |
| 3231 PINE ST | 14-10-02-03-012-0003.00 |

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DOROTHY THOMURE, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.  4:23-cv-00375-HEA |
| SRG GLOBAL COATINGS, LLC, (*d/b/a* SRG Global Farmington), | ) ) ) | |
| Defendant. | ) ) | |

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

To:     ALL MEMBERS OF THE SETTLEMENT CLASS IN THIS MATTER.

**PLEASE READ THIS NOTICE CAREFULLY.**

A class action settlement has been reached on behalf of certain real property deed holders and their spouses located near the SRG Global facility located in Farmington, Missouri (the "Facility") based on the allegation that Per- and Polyfluorinated Substances (PFAS) and metals migrated from the Facility and onto the properties and into the well water of the Settling Plaintiff and all other similarly situated deed holders. Because this is a class settlement, judicial approval of the settlement is necessary. On _____, the Court in this Lawsuit granted preliminary approval of the Agreement.

You are being sent this Notice because you are believed to be a member of the Settlement Class. This Notice provides information concerning the Lawsuit, describes the general terms of the settlement, and explains your options with respect to this case and its settlement.

You will be included in this settlement if you are not a minor, and you are the legal deed holder or the spouse of a legal deed holder of any real property listed in Exhibit A.

Your rights are affected whether you act or DO NOT ACT. Read this Notice carefully.

## BACKGROUND ABOUT THE CASE

The above captioned lawsuit was brought by Dorthy Thomure ("Plaintiff") against SRG Global Coatings, LLC ("Defendant") seeking property damages (not personal injuries) (the "Lawsuit"). Plaintiff asserted various legal claims against Defendant, all based on the allegation that hazardous chemicals, including PFAS, and metals escaped from the Facility and impacted or threatened nearby properties. Plaintiff is represented in this case by Ted N. Gianaris of Gianaris Trial Lawyers, LLC ("Class Counsel").

Defendant denies that it is liable on any of Plaintiff's claims and denies that any person has suffered damage to their property relating to the Facility. To date, the Court has not made any rulings on Plaintiff's claims or Defendant's defenses.

## THE PROPOSED SETTLEMENT

Plaintiff and the Defendant have agreed to the settlement described below. Plaintiff and Class Counsel believe that this Settlement is fair, reasonable and in the best interest of the Settlement Class. The Court has determined, preliminarily, that the Settlement is fair, reasonable and in the best interest of the Settlement Class, subject to the hearing on final approval of the Settlement.

The main terms of the settlement are as follows:

**Agreed Certification of the Settlement Class**:  For purposes of settlement only, the parties have agreed to certification of a class consisting of all the deed holders and deed holders' spouses, who live in the Class Area. A list of the 89 addresses within the Settlement Class Area is attached hereto as Exhibit A. The deed holders and deed holders' spouses, who live in the Class Area are referred to as the "Settlement Class."

**Monetary Payments to the Class and Implementation of Permanent Water Solution**: Defendant has agreed to pay up to the total sum of $3,500,000 (the "Settlement Funds") and implement a Permanent Water Solution as equitable relief, to settle the Lawsuit. Defendant will extend a City of Farmington water mainline ("mainline extension") to the proximity of each property in the settlement Class Area. Defendant will pay an additional amount up to $6,000 per Deeded property to connect that property to the mainline extension if within 90 days of completion of the mainline extension, the Deed holder  works with Defendant to connect their property to the City water mainline. (the "Permanent Water Solution"). Defendant will extend a City of Farmington water mainline to the proximity of each property in the Settlement Class owned by a Releasing Party within 24 months of Defendant's receipt of any final required approval or permitting authority by the City of Farmington, the County of St. Francois, or the State of Missouri. Defendant positively affirms it has authorized a contractor to begin the permitting process and will use all due diligence and necessary effort required to complete the permitting process to procure any required final approval and/or permitting authority. With written notice to Defendant, any Releasing Party will within thirty (30) days of a written request, be provided an update and summary of mainline extension efforts by Defendant.  Defendant agrees to continue to provide an alternative water solution in the form of bottled water to the Releasing Parties for up to twenty-four (24) months after the entry of a final approval order of the Class Settlement by the Court in this lawsuit or up to three months after the Permanent Water Solution is complete, whichever is later. The Settlement Funds shall be distributed as set forth below.

**Attorneys' Fees and Costs**:  Subject to approval by the Court, Class Counsel shall receive as attorneys' fees 26% of the Settlement Funds to be calculated prior to reimbursement of costs and expenses plus reimbursement for all expenses reasonably incurred by Class Counsel

2

in prosecuting this Lawsuit.

**Class Representative Payment**:  In addition to the payment she is entitled to receive as a member of the Settlement Class, the Plaintiff, as a class representative, shall also be paid $15,000.00, in consideration of her assumption and diligent performance of the duties of class representative, and the time and effort she expended in connection with the Lawsuit.

**Payment to Class Members**:  The balance of the Settlement Funds, after payment of the attorneys' fees and costs and expenses, and the payment of the class representative payment (the balance being the "Class Payments"), and after any reduction in the Settlement Funds based on the rate of Opt Outs, shall be divided amongst all members of the Settlement Class by address. Class Payments shall be made to the deed holder(s) who complete a Claim Form by [date]. The amount that Settlement Class members receive is subject to adjustment based on factors and terms that have been presented to the Court for approval.

**Timing of Payments to Class Members**:  Class Counsel will distribute the Class Payments to members of the Settlement Class who completed and submitted a Claim Form by [date], promptly upon receipt of the Settlement Funds from Defendant. Judicial approval of this as a class settlement is necessary before any payment can be made. A court hearing must be held and class members will have an opportunity to be heard; therefore the timing of the payment is not known.

**Rights the Class Is Giving Up**: Unless you excluded yourself, you are staying in the Class. If the settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Defendant or its Affiliates (as defined in next section) about the claims and rights resolved and released by this settlement. The claims and rights you are giving up are called Released Claims. As explained below, you cannot exclude yourself from the settlement and release of claims to extend a City of Farmington water mainline ("mainline extension") to the proximity of each property in the settlement Class Area, and you will give up those claims if the settlement is approved by the Court.

**Released Claims**:  If and when the settlement becomes final, it is expressly understood and agreed that the overall intent of the subparagraphs below is that, with respect to the occurrence alleged in the Lawsuit, the Settling Plaintiff and Settlement Class shall have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, waived, compromised, settled, and discharged the Settling Defendant and the Released Parties ("Released Parties" refers to Defendant and its parents, subsidiaries, divisions, affiliated business entities, predecessors, successors, and all of their agents, employees, officers, directors, partners, and current and former shareholders, owners, members, promoters, representatives, distributors, trustees, assigns, attorneys, insurers, and subrogees, individually or in their corporate or personal capacity) from any and all past, present, and future claims, actions, causes of action, judgments, verdicts, rights, demands, theories of recovery, damages, losses, injuries, harm, covenants, promises, contracts, agreements, obligations, liabilities, debts, liens, fees, costs, expenses, punitive damages or compensation whatsoever, of whatever nature, kind, or character, including, but not limited to, nuisance, negligence, trespass, property damage, economic harm, medical

monitoring, fear of disease, increased risk of disease, and any other non-physical injury or non-death form or category of loss, harm, or injury, whether based upon statute, common law, or regulation, whether in equity or at law, that in any way or to any extent relate to, arise out of, or result from the occurrences alleged in the Lawsuit, or that were or could have been asserted in the Lawsuit, except for personal injury claims. All Parties agree and it is material to this Agreement that Releasing Parties are not settling or releasing any present or future personal injury claims or death claims. The mere presence of PFAS in blood or urine is not considered a personal injury or death claim and cannot be the basis of a personal injury or death claim.

     a. ***Reservation and Preservation of Personal Injury and Death Claims***. Releasing Parties fully reserve any and all present and future personal injury and death claims, excluding the mere presence of PFAS in blood or urine.

     This language is meant to represent the significant terms and the scope of the release, which is more fully set forth in the Settlement Agreement and Release entered into between the parties.

## FAIRNESS HEARING

     The Court has already determined, preliminarily, that this settlement is fair but will conduct another hearing to determine whether to grant final approval of the settlement. At this Fairness Hearing, the Court will be available to hear any objections and arguments concerning the fairness of the proposed settlement. The hearing will take place on _____ at _____ before Judge Henry E. Autrey in Courtroom 10N of the United States District Court for the Eastern District of Missouri, Thomas F. Eagleton U.S. Courthouse, 111 S. 10th Street, St. Louis, Missouri 63102. If the settlement is not approved, the Lawsuit will proceed as if no settlement has been attempted. In that event, Defendant will retain the right to contest the merits of the claims being asserted against it in the Lawsuit. There can be no assurance that if the settlement is not approved, the Settlement Class will recover more or less than is provided for in the settlement, if anything.

## YOUR OPTIONS

     Your options concerning this settlement are explained further below.

| Your Legal Rights and Options in This Settlement | |
|---|---|
| **Submit a Claim Form**<br>**Deadline: [date]** | If you are a Class Member, you must timely submit a Claim Form or you will receive no payment. |
| **Ask to be Excluded**<br>**Deadline: [date]** | Except as explained in this Notice, this is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Defendant related to the claims for monetary relief (including damages) this settlement resolves. However, you cannot be excluded from the release of equitable claims to extend a City of Farmington water mainline ("mainline extension") to the proximity of each property in the settlement Class Area. |
| **Object to the Settlement**<br>**Deadline: [date]** | You may object to the settlement by writing to the Court about why you do not like the settlement. If you object and you are a |

| | Class Member, you may also file a claim for a payment. |
|---|---|
| **Go to a Hearing on [date]** | You may object to the settlement and ask the Court for permission to speak at the Fairness Hearing about your objection. |
| **Do Nothing** | If you do nothing, you will give up the right to sue, continue to sue, or be part of another lawsuit against Defendant about the claims resolved and released by this settlement. |

1.      **IF YOU WISH TO REMAIN IN THE SETTLEMENT CLASS AND RECEIVE THE MONETARY BENEFITS OF THIS SETTLEMENT, YOU MUST COMPLETE A CLAIM FORM**. If the settlement is approved, you will be bound by the terms of the settlement and will receive a cash payment as described above. If this is the option you elect, a Claim Form must be completed and postmarked or its equivalent within sixty (60) days of delivery of the Claim Form to you. If the settlement is approved, you will be contacted at a later date concerning your cash payment and implementation of a Permanent Water Solution.

2.      **Excluding Yourself from the Settlement**. Excluding yourself is telling the Court that you do not want to be a part of the settlement. If you want to keep the right to sue or continue to sue Defendant or the Released Parties about the claims for monetary relief that are being released in the settlement if it is finally approved, you must take steps to get out of the settlement. This is called excluding yourself from or opting out of the settlement. You may exclude yourself from the settlement only with respect to the claims for monetary relief being settled and released. You may not exclude yourself from the settlement and release of claims for equitable relief to extend a City of Farmington water mainline ("mainline extension") to the proximity of each property in the settlement Class Area.

        To exclude yourself from the settlement of claims for monetary relief (including damages), you must submit an Opt Out Form or file a written request for exclusion. Opt Out Forms are available online at DelassusWaterLawsuit.com. Your request for exclusion must include: (1) your name, current address, and telephone number; (2) a statement of the facts that make you a Class Member; (3) a statement requesting exclusion from the Class as certified under Rule 23(b)(3); and (4) your signature. Your Opt Out Form or request for exclusion must be mailed to the Settlement Administrator at the address below so it is postmarked by **70 days after entry of the Preliminary Order**, but in no event no less than sixty (60) days after delivery of this notice:

*Thomure v. SRG Global Coatings, LLC*
Settlement Administrator - 8900
P.O. Box 2599
Faribault, MN 55021-9599

        If you exclude yourself, you are telling the Court that you do not want to be a party of the settlement. You will not receive a payment from this settlement. You can only get a payment if you stay in the settlement and submit a valid Claim Form.

        Unless you exclude yourself, you are giving up the right to sue Defendant and its Affiliates for the claims that this settlement resolves and releases. You must exclude yourself

5

from *this* litigation to start or continue with your own lawsuit or be part of any other lawsuit against the Defendant or the Released Parties, except for all present and future personal injury and death claims, excluding the mere presence of PFAS in blood or urine, as explained above. Again, you can exclude yourself from the settlement claims for monetary relief, but you cannot exclude yourself from the settlement of claims for equitable relief to extend a City of Farmington water mainline ("mainline extension") to the proximity of each property in the settlement Class Area . This means that you can exclude yourself from giving up the Released Claims affecting claims for monetary relief but you cannot exclude yourself from giving up the Released Claims affecting claims for equitable relief. Any exclusion request will be honored to the full extent possible under the terms of the settlement agreement and subject to any rulings by the Court.

3.    **Objecting to the Settlement**. Objecting is simply telling the Court you do not like something about the settlement. If you are a Class Member, you can object to the settlement if you do not like it or a portion of it. You can give the reasons why you think the Court should not approve it. The Court will consider your views. If this is the option you elect, you must file your objection in writing with the Clerk of the United States District Court for the Eastern District of Missouri, Thomas F. Eagleton U.S. Courthouse, 111 S. 10th Street, St. Louis, Missouri 63102, and serve a copy of your objection on Class Counsel at the address listed below. The objection must be received by the Clerk of Court on or before _____, and must include your name and address, proof of your membership in the Settlement Class, refer to the name and number of the case, and include a statement of all the reasons why you believe that the Court should find that the proposed settlement is not in the best interests of the Settlement Class. Please note that it is not sufficient to simply state that you object. Your objection must include all of the papers and evidence you intend to submit in support of those challenges, three dates at least ten days before the Final Fairness Hearing on which you will be available to be deposed by lawyers for the Parties and must include your signature. Your objection must also include the caption of each case in which you or your counsel have objected to a class settlement within the five years preceding your objections in this case and a copy of all order or rulings on those objections and all agreements that relate to your objection in this case or the process of objecting between you, your counsel or any other person.

Objecting is simply telling the Court you do not like something about the settlement. Excluding yourself is telling the Court that you do not want to be a part of the settlement.

4.    **Appearance at the Fairness Hearing**. You or your attorney may speak at the Fairness Hearing about your objection. To do so, you must file an objection to the settlement as described in paragraph 3 above, and you must include a statement in your objection indicating that you or your attorney intend to appear at the Fairness Hearing.

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you do not have to. The Court will hold a Fairness Hearing at _____ on [date] in Courtroom 10N at the United States District Court for the Eastern District of Missouri, Thomas F. Eagleton U.S. Courthouse, 111 S. 10th Street, St. Louis, Missouri 63102. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. It will also consider whether to approve Class Counsel's request for an award of attorneys' fees and costs. If there are objections, the Court will consider them. Judge Autrey may listen to

people who have asked to speak at the hearing. After the hearing, the Court will decide whether to approve the settlement.

You are not required to attend the Fairness Hearing. Class Counsel will answer any questions Judge Autrey may have. However, you are welcome to come to the hearing at your own expense. Objecting is simply telling the Court you do not like something about the settlement. If you send an objection, you do not need to attend the Fairness Hearing, but you have the right to attend the Fairness Hearing as long as you mailed your written objection on time and complied with the requirements outlined in paragraph 3 above, the Court will consider your objection. You may also pay your own lawyer to attend, but it is not necessary.

5.    **Do Nothing**. If you are a member of the Settlement Class and you do nothing, you will give up the right to bring your own lawsuit, or continue with a lawsuit, or be a part of a lawsuit against the Defendant and the Released Parties about the claims resolved and released by this settlement. If you do not submit a Claim Form, you will not receive a payment from the settlement.

## INQUIRIES

Any questions concerning this Notice or the settlement can be directed to Class Counsel at the address below or by calling the Settlement Administrator:

*Thomure v. SRG Global Coatings, LLC*
Settlement Administrator - 8900
P.O. Box 2599
Faribault, MN 55021-9599
1-888-575-6667
info@delassuswaterlawsuit.com

PLEASE DO NOT CALL OR WRITE THE CLERK OF COURT. THE CLERK OF COURT CANNOT ANSWER QUESTIONS CONCERNING THE LAWSUIT OR THE SETTLEMENT.

Dated:_____

BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTER DISTRICT OF MISSOURI.

7

**Exhibit A**

**List of Settlement Class Addresses**

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DOROTHY THOMURE, individually and on behalf of all others similarly situated,     ) ) ) | |
|      Plaintiffs,     ) ) | |
| vs.     ) ) | Case No.  4:23-cv-00375-HEA |
| SRG GLOBAL COATINGS, LLC, (*d/b/a* SRG Global Farmington),     ) ) ) | |
|      Defendant.     ) | |

**[PROPOSED] FINAL JUDGMENT AND ORDER**

Pursuant to the Order Preliminarily Approving Settlement, Conditionally Certifying Class for Settlement Purposes, Approving Form and Manner of Class Notice, and Setting Date for Fairness Hearing, dated _____ 2025 (the "Preliminary Approval Order") and on application for final approval of the proposed Settlement Agreement, this matter came before the Court for the Fairness Hearing on _____, 2025.

Plaintiff, on behalf of herself and the Settlement Class Members, seeks final approval of the Settlement in its entirety, including an award of attorneys' fees and expenses (including the costs of settlement notice and administration) to Class Counsel, an incentive award to Plaintiff, and the allocation of the remaining funds to the Settlement Class Members. The Parties, through their counsel, attended and participated in the Fairness Hearing.

Pursuant to the Preliminary Approval Order, notice of the Settlement was given to the Class Members, which was adequate and sufficient notice of the proposed Settlement and the Fairness Hearing. Among other things, the notice advised Class Members of the opportunity to object to the proposed settlement or to opt out of the Settlement Class. Notice of the proposed Settlement was also properly given to the appropriate state and federal agencies pursuant to 28

U.S.C. § 1715. At the Fairness Hearing, all objections that were properly and timely made, if any, by or on behalf of any Settlement Class Member were duly considered and are hereby overruled.

The Court, having read and fully considered the terms of the Settlement Agreement and all related submissions, and finding that good cause having been shown:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1.      Except as otherwise defined herein, all initial capitalized terms used in this Order shall have the same meaning ascribed to them in the Settlement Agreement.

2.      The Court has jurisdiction over this Litigation and the parties to the Settlement Agreement, including the Settlement Class Members.

3.      Having considered that a class action settlement should be approved only if fair, reasonable, and adequate after comparing the terms of the settlement with the likely rewards of litigation, see Rule 23(e)(2); in light of and having considered the relevant authority, and having considered negotiation of, the terms of, and all the materials submitted concerning the Settlement Agreement; having considered the Plaintiff's likelihood of success and the claims in the Complaint at trial, and the possibility that Defendant could prevail on one or more of the defenses pleaded in their answers; having considered the range of the Plaintiff's (and the putative litigation class's) possible recovery and complexity, expense, and duration of the Litigation; and having considered the substance and amount of opposition to the proposed settlement; it is hereby determined that:

   i.      the Settlement was entered into in good faith, being fairly and honestly negotiated;

   ii.     the outcome of the Litigation is in doubt;

iii.    it is possible a Settlement Class Member could receive more if the Litigation were to go to trial, but that it is also quite possible that a Settlement Class Member could receive less and/or that Defendant could defeat class certification of the class;

iv.    the Parties have in good faith determined that the Settlement is in their respective best interests, including both the Plaintiff and Class Counsel determining that it is in the best interests of the Settlement Class Members;

v.    the aggregate consideration is commensurate with the claims asserted and that will be released as a part of the Settlement; and

vi.    the proposed Settlement's terms fall well within the range of settlement terms that would be considered fair, reasonable, and adequate resolution of the Litigation.

Therefore, pursuant to Rule 23(e), the terms of the Settlement relating to the above-captioned Litigation are hereby finally approved as fair, reasonable, and adequate as to, and in the best interest of, the Settlement Class and each of the Settlement Class Members, in light of the factual, legal, and procedural considerations raised by this Litigation. The Court further finds that the Settlement complies with the applicable requirements under Missouri and Federal law, the Rules of the Court, and any other applicable law, and due process requirements.

4.    Solely for the purpose of settlement in accordance with the Settlement Agreement, and pursuant to Rules 23(a), (b)(2), and (b)(3)(A)-(C), this Court hereby finally certifies the following Settlement Class:

a.    all deed holders, and deedholders' spouses, of properties in the Class Area; provided, however, that the "Class" shall not include (a) Defendants, their

3

corporate officers, or their legal counsel in this Lawsuit; (b) Class Counsel, including its partners, members, and shareholders, or (c) the judge to whom this Lawsuit is assigned, any member of the judge's immediate family, or any other judicial officer assigned to this case.

Excluded from the Settlement Class are all Class Members listed on Exhibit 1, each of whom timely complied with the requirements set forth in the Class Notice to exclude themselves from and Opt Out of the Settlement Class and the Settlement; thus, none of the individuals identified on Exhibit 1 are bound by this Final Judgment and Order or may receive benefits under the Settlement as to the relief provided under Rule 23(b)(3).

5.    The Court finally appoints Named Plaintiff Dorothy Thomure as representatives of the Settlement Class. Pursuant to 23(g), the Court appoints Ted Gianaris and Gianaris Trial Lawyers as Class Counsel.

6.    Pursuant to the Rule 23(e)(1) and all applicable law, notice was properly given to the Class Members in accordance with the terms of the Settlement Agreement and the Preliminary Approval Order. The Class Notice, which the Court approved in the Preliminary Approval Order, is written in plain English, and is clear, concise, and readily understandable. Class Notice included (i) mailing the written Notice, along with a Claim Form to each reasonably identifiable address within the class area; (ii) the establishment and maintenance of a case website containing relevant case documents, important dates, frequently asked questions and allowing class members to file claims online. The Court finds that the notification provided for and given to the Class (a) constitutes the best notice practicable under the circumstances; (b) was reasonably calculated to apprise Class Members of the existence of and their rights related to the Litigation and the terms and conditions of the proposed Settlement; (c) constitutes due, adequate,

4

and sufficient notice to all persons entitled to notice; and (d) is in full compliance with all applicable requirements of Missouri and Federal law, the Rules of the Court, any other applicable law and due process requirements.

7.    Pursuant to 28 U.S.C. § 1715, notice was properly given to the appropriate federal and state agencies, including the United States Attorney General, the Attorney General for the State of Missouri, and the Missouri Department of Natural Resources. Each such notice was provided more than ninety (90) days ago, thereby complying with the statutory notice period.

8.    Pursuant to Rule 23(e), having ruled that due and adequate notice was provided to the Class Members and that they were afforded an opportunity to participate in the proceedings and object to the Settlement Agreement or to exclude themselves from the settlement by opting out of the Settlement Class, it is hereby determined that each Settlement Class Member (whether or not the Settlement Class Member objected, submitted a Claim Form, or otherwise participated in the Litigation, the settlement, or the approval process) shall be bound by the terms and provisions of the Settlement Agreement and this Final Judgment and Order, including the releases and covenants not to sue set forth in the Settlement Agreement, which are hereby incorporated by reference and become part of this Final Judgment and Order.

9.    In accord with the Settlement Agreement, each of the Releasing Parties has expressly, intentionally, fully, finally, and forever released, waived, compromised, settled, and discharged all Released Claims. And each of the Releasing Parties is barred from asserting any of the Released Claims against any of the Released Parties;

10.     Pursuant to the terms of the Settlement Agreement, within forty-five (45) days of the date the Effective Date of the Settlement Agreement, Defendant shall fund the Settlement Fund, which shall be held by the Class Administrator in a Qualified Settlement Fund ("QSF")

account under the Internal Revenue Code. Specifically, Defendants shall deposit the total sum of

_____ by check or wire or electronic transfer to the Class

Administrator in a QSF account established by the Class Administrator.  The deposit by

Defendant shall fully satisfy each and every obligation of Defendant to the Plaintiff, Class

Counsel, and the Settlement, and each Settlement Class Member concerning this Litigation, the

Settlement Agreement and the Released Claims.

11.    All claims against Defendant are hereby dismissed on the merits and with

prejudice.

12.    Class Counsel is hereby awarded $_____ in costs and expenses of

litigation (including administration) and $_____ in attorneys' fees. The Named

Plaintiff is awarded an incentive award of $15,000.

13.    The Class Administrator shall administer the Settlement Agreement and distribute

payment to Class Members.

14.    This Court hereby retains jurisdiction over all matters relating to the

interpretation, performance, implementation, administration, and enforcement of the Settlement

Agreement.  The Court retains further jurisdiction to enforce this Final Judgment and Order and

the distribution of the Settlement Fund.  The reservation of jurisdiction by this Court in this

matter does not affect in any way the finality of this Final Judgment and Order.

15.    This Final Judgment and Order, the settlement, and all documents, negotiations,

statements, or proceedings relating to it are not and shall not be construed to be an admission or

concession by any Released Party of any liability or wrongdoing whatsoever and shall not be

offered as evidence of any such liability or wrongdoing in this or any other proceeding.

Moreover, the Settlement Agreement and all related documents are not and shall not be construed

to be an admission or concession by any Released Party of acquiescence to class certification in any case other than this case's Settlement Class for settlement purposes only. None of this information may be offered or received as evidence or argument against Defendant of any wrongdoing or to limit its ability to take any position it would otherwise be able to take in this or any other proceeding absent the Settlement of the Litigation.

16.     This Order and Final Judgment, the Settlement, and all papers relating thereto are not and shall not be construed to be an admission or concession by Plaintiff with regard to the merits of her claims whatsoever and shall not be offered as evidence as to the merits in this or any other proceeding.

17.     There is no just reason for delay in the entry of this Final Judgment and Order as a final judgment.  Furthermore, there is reason to enter and certify it as a final judgment, including without limitation that doing so will expedite any appeal, which, in turn, will shorten the time it will take for this Final Judgment and Order either (a) to become Final and non-appealable thereby expediting the distribution of the Settlement Fund to the Settlement Class Members or (b) to be overturned on appeal thereby facilitating a modified settlement or the reconvening of the Litigation. The Court expressly directs the Clerk of the Court to enter this Final Judgment and Order as a final judgment pursuant to Rule 54(b).

18.     In the event that this Final Judgment and Order fails to become final and nonappealable for any reason, including without limitation that it is reversed on appeal and/or the Settlement Agreement is terminated, then this Final Judgment and Order, the Preliminary Approval Order, and all related orders from this Court shall be automatically rendered null and void and shall be deemed vacated.  In such event, the Parties and the putative class members shall be returned to the same litigation position that they were in prior to seeking preliminary

7

approval of the Settlement Agreement, and they shall be free to raise all claims, defenses, and

arguments as they would have been able to had they never negotiated or sought approval of the

Settlement Agreement. This includes the Released Parties' right to oppose class certification on

any and all grounds (including but not limited to Rule 23(a), (b)(2), and (b)(3)(A)-(C)).

     The Clerk is directed to enter this Judgment forthwith as the final judgment of this Court.

SO ORDERED.


DATED: _____     BY: _____
                                  Henry Edward Autrey
                                  United States District Court Judge

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DOROTHY THOMURE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No.  4:23-cv-00375-HEA ) |
| SRG GLOBAL COATINGS, LLC, (*d/b/a* SRG Global Farmington), | ) ) ) |
| Defendant. | ) ) |

## PRELIMINARY APPROVAL ORDER

Plaintiff Dorothy Thomure, individually and on behalf of each member of the Settlement Class, and Defendant SRG Global Coatings, LLC, having made a request pursuant to Rule 23 of the Federal Rules of Civil Procedure for an order preliminarily approving the proposed settlement of this lawsuit with the Settlement Agreement and Limited Release (the "Agreement")[1] filed with this Court, and the Court having read and considered the Agreement.

**IT IS HEREBY ORDERED:**

1.    The Agreement, and all of its terms and conditions, is preliminarily approved as fair, just, reasonable, and adequate, subject to further consideration at a final approval hearing (the "Final Approval Hearing").

2.    For purposes of settlement only, the Court conditionally certifies the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3). Dorothy Thomure is appointed as representative of the Settlement Class, and Ted N. Gianaris and the law firm of Gianaris Trial Lawyers, LLC are appointed as Class Counsel.

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Agreement.

3.      The Court approves the form of the Class Notice (Exhibit B to the Agreement) and directs that Class Counsel shall serve same upon the Settlement Class (by first class mail, postage prepaid to each Class Member whose address is reasonably ascertainable) no later than twenty-one (21) days after the Court issues this Preliminary Approval Order. The Court finds that service of the Class Notice in this manner constitutes the best practice practicable under the circumstances to members of the Settlement Class and complies fully with the provisions set forth in Federal Rule of Civil Procedure 23(e)(1), and any and all substantive and procedural due process rights guaranteed by the United States Constitution and any other applicable law. The Court further finds that the Class Notice clearly and concisely informs the Settlement Class of their rights and options with respect to the proposed settlement, in plain, easily understood language, in conformity with the requirements of Federal Rule of Civil Procedure 23.

4.      The Class Notice, along with copies of the Agreement and the Claim Form (Exhibit H to the Agreement) shall be posted by Class Counsel on the website delassuswaterlawsuit.com

5.      As provided for in the Settlement Notice, the Settlement Class shall be afforded the right to either opt-out from or object to the final approval of this settlement.

6.      The Court approves the form of the notices to "appropriate Federal and State officials," attached to the Agreement as Exhibit F, and directs Defendant to serve them (by hand delivery or U.S. Mail or its equivalent) no later than ten (10) days after the Court issues this Preliminary Approval Order. The Court finds that service of the notice in this manner complies fully within the provisions set forth in the Class Action Fairness Act, 28 U.S.C. § 1715, and any and all substantive and procedural due process rights guaranteed by the United States Constitution and any other applicable law. As provided for in the attached notice, the appropriate

2

Federal and State officials have ninety (90) days to object or oppose the settlement.

7.      The Final Approval Hearing is scheduled herein for _____ __, 2025 at __ .m., at which time the Court will consider the entry of the Final Approval Order and Judgment (Exhibit C to the Agreement).

8.      Members of the Settlement Class shall have seventy (70) days after the entry of the Preliminary Approval Order to opt out of the Settlement Class. Any Settlement Class member who opts out shall be excluded from the Settlement Class and shall have no rights under the Agreement. A request for exclusion must be in writing, include (a) the full name, current address, and telephone number of the Class Member; (b) a statement of the facts that make the sender a Class Member; (c) a statement requesting exclusion from the Class as certified under Rule 23(b)(3); and (d) the signature of the Class Member. The request must be mailed to the address provided in the Class Notice and postmarked (or mailed by overnight delivery) within seventy (70) days after the entry of the Preliminary Approval Order.

9.      All members of the Settlement Class who do not request exclusion shall have seventy (70) days after entry of the Preliminary Approval Order.  Any objection must be in writing, be signed by the objecting Settlement Class Member, be filed with the Court, and be mailed to Class Counsel and counsel for Defendant. Any objection must  state (a) the full name, current address, and telephone number of the Class Member; (b) a statement of the facts that make the Class Member a member of the Class; (c) a statement describing all of the Class Member's challenges to this Agreement or the Settlement and the reason for those objections; (d) all of the papers and evidence the Class Member intends to submit in support of those challenges; (e) a statement of whether the Class Member intends to appear at the Fairness Hearing; (f) the signature of the Class Member; (g) three dates at least ten (10) days before the

3

Fairness Hearing on which the Class Member will be available to be deposed by lawyers for the Parties; (h) the caption of each case in which the Class Member or the counsel representing the Class Member have objected to a class action settlement within the five years preceding the date of the filing of the objection in this case and a copy of all orders related to or ruling upon those objections; and (i) all agreements that relate to the objection in this case or the process of objecting, whether written or verbal, between or among the Class Member, their counsel, and/or any other person or entity. Further, any person objecting to final approval of the Agreement must appear in person at the Final Approval Hearing. Any member of the Settlement Class who fails to timely object substantially in the manner prescribed herein or to appear at the Final Approval Hearing shall be deemed to have waived his or her objections and forever be barred from making any such objections in this action. Only members of the Settlement Class shall have the right to object to the settlement. At any time prior to the Final Approval Hearing, Class Counsel and Defendant shall have the right to respond in writing to any objections timely received.

IT IS SO ORDERED.


DATED: _____          BY: _____
                                            Henry Edward Autrey
                                            United States District Court Judge

4

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| DOROTHY THOMURE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SRG GLOBAL COATINGS, LLC,<br>(*d/b/a* SRG Global Farmington),<br><br>Defendant. | Case No.  4:23-cv-00375-HEA |

## JOINT STIPULATION OF DISMISSAL WITH PREJUDICE

Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), Plaintiff Dorothy Thomure, individually and on behalf of all others similarly situated, and Defendant SRG Global Coatings, LLC (*d/b/a* SRG Global Farmington), by and through undersigned counsel, hereby stipulate that this action and all claims and parties herein be dismissed with prejudice, with each party to bear its own attorneys' fees, costs, and expenses.

By:  /s/ _____
    William G. Beck, #26849(MO)
    Allyson E. Cunningham, #64802(MO)
    Jessica K. Rosell, #61247(MO)
    Lathrop GPM LLP
    2345 Grand Boulevard, Suite 2200
    Kansas City, Missouri 64108-2618
    Telephone: (816) 292-2000
    Email: william.beck@lathropgpm.com
    Email: allyson.cunningham@lathropgpm.com
    Email: jessica.rosell@lathropgpm.com

By:  /s/ _____
    Ted N. Gianaris, #48359(MO)
    Joshua A. Edelson, #70952(MO)
    Gianaris Trial Lawyers, LLC
    One Court Street
    Alton, IL 62002
    Telephone: (618) 619-0010
    Email: tgianaris@lawforpeople.com
    Email: jedelson@lawforpeople.com

    *ATTORNEYS FOR PLAINTIFF*

Arielle B. McPherson
Lathrop GPM LLP
155 North Wacker, Suite 3800
Chicago, IL 60606
Telephone: 312-920-3300
Email: arielle.mcpherson@lathropgpm.com

*ATTORNEYS FOR DEFENDANT*

# EXHIBIT F

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

DOROTHY THOMURE, individually and on
behalf of all others similarly situated,

        Plaintiffs,

vs.

SRG GLOBAL COATINGS, LLC
(*d/b/a* SRG Global Farmington),

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.  4:23-cv-00375-HEA

NOTICE OF PROPOSED
CLASS ACTION SETTLEMENT

To:

Pamela Bondi, Esq.
United States Attorney General
U.S. Department of Justice
Washington DC, 20530

Kurt Schaefer, Esq.
Director for Missouri Department of
Natural Resources
P.O. Box 176
Jefferson City, MO  65102

Andrew Bailey, Esq.
Missouri Attorney General
Supreme Court Building
207 W. High Street
P.O. Box 899
Jefferson City, MO  65102

PLEASE TAKE NOTICE that Plaintiff Dorothy Thomure, individually and on behalf of
a class of persons similarly situated, and Defendant SRG Global Coatings, LLC, have reached a
proposed class action settlement of the above-captioned case.  Pursuant to 28 U.S.C. § 1715(b),
Defendant SRG Global Coatings, LLC advises you as follows:

1.      Copies of the plaintiffs' Civil Cover Sheet and Class Action Complaint are
attached hereto as Exhibits 1 and 2.

2.      A hearing to consider final approval of the proposed settlement in this matter is currently scheduled for [date] at [time], at the United States District Court for the Eastern District of Missouri, Thomas F. Eagleton U.S. Courthouse, 111 S. 10th Street, St. Louis, Missouri, 63102, before the Honorable Henry E. Autry in Courtroom 10N.

3.      The class Settlement Agreement is attached hereto as Exhibit 3.

4.      The Notice of Proposed Class Action Settlement, containing the Release, will be sent to all members of the settlement class and is attached as an exhibit to the Settlement Agreement.

5.      A Release was approved by the Court on [date] which found that the Release was fair, reasonable and in the best interest of the class.

6.      A copy of the proposed Final Approval Order and Judgment of Dismissal is attached as an exhibit to the Settlement Agreement.

7.      A list of the addresses that constitute the Settlement Class with a tentative and preliminary list of potential Settlement Class members is attached to the Settlement Agreement.

8.      The Court has not issued any written opinions concerning class certification or notification, settlement, or final judgment or dismissal.

Dated:

**GIANARIS TRIAL LAWYERS, LLC**

 /s/
Ted N. Gianaris #48359 (MO)
Joshua A. Edelson #70952 (MO)
One Court Street
Alton, Illinois  62002
Telephone: (618) 619-0010
Facsimile:  (618) 259-2251
tgianaris@lawforpeople.com
jedelson@lawforpeople.com

*Attorneys for Plaintiffs*

**LATHROP GPM LLP**

 /s/
Allyson E. Cunningham #64802 (MO)
William G. Beck #26849 (MO)
Jessica K. Rosell #61247 (MO)
2345 Grand Blvd., Ste. 2200
Kansas City, MO 64108-2618
Telephone: (816) 292-2000
Fax: (816) 292-2001
allyson.cunningham@lathropgpm.com
william.beck@lathropgpm.com
jessica.rossell@lathropgpm.com

Arielle B. McPherson #72928(MO)
Lathrop GPM LLP
155 North Wacker, Suite 3800
Chicago, IL 60606
Telephone: 312-920-3300
Email: arielle.mcpherson@lathropgpm.com

*Attorneys for Defendant SRG Global Coatings, LLC*

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DOROTHY THOMURE, individually and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| SRG GLOBAL COATINGS, LLC, | ) |
| (*d/b/a* SRG Global Farmington), | ) |
| | ) |
| Defendant. | ) |
| | ) |

Case No.  4:23-cv-00375-HEA

**DECLARATION OF TIFFANEY A. JANOWICZ**
**REGARDING NOTICE TO CLASS MEMBERS**

I, Tiffaney A. Janowicz, hereby declare as follows:

1.      I am a senior vice president of Rust Consulting, Inc. ("Rust"), a nationally recognized notice and administration firm.  Rust designs and implements notice and administration programs of all sizes and types, including consumer, antitrust, securities, insurance, healthcare, labor and employment, property, finance, and products liability class actions. A C.V. outlining Rust's services and experience is attached as Exhibit A.

2.      I have over 25 years of experience at Rust.  I lead Rust's consumer, insurance, and healthcare practices areas, and I also have a significant experience in antitrust and product liability matters. I have designed and/or managed hundreds of class action notice and administration programs.  I speak on class action matters (Continuing Legal Education courses), and I have been a co-author or panelist on relevant topics in the notice and administration industry.  Attached as Exhibit B is my C.V., which outlines my experience and qualifications.

3.      I submit this declaration in connection with the above-captioned matter to describe the plan of notification and administration.  I make this declaration based upon my personal knowledge and information provided by my associates and staff.  The information included in this declaration is of a type reasonably relied upon in the fields of class notice and administration.

4.      I submit this declaration to describe the Notice Program to reach class members and why it is reasonable and adequate under the circumstances.

## OVERVIEW

5.      I understand that the above-captioned action against Defendant SRG Global Coatings, LLC, ("SRG") is brought on behalf of  the Class consisting of:

> All deed holders, and deed holders' spouses of the approximately 90 specified properties near the SRG Global facility located in Farmington, Missouri ("Class Area").

## NOTICE PROGRAM

6.      The Notice Program is designed to reach class members, providing opportunities to learn about the lawsuit, and act upon their rights, through direct notice, a dedicated website, and outreach efforts by Class Counsel.  The Notice Program is designed to meet due process requirements, including notices that are written in plain language.  Rust worked with counsel to develop the following plan to disseminate notice to all known members of the class.

### *Direct Notice*

7.      Using a comprehensive list of Class members' last known addresses provided by Class Counsel, Rust will mail a Class Notice and Claim Form by First-Class U.S. Mail to class members.  Prior to mailing, Rust will update the class member address information using the National Change of Address (NCOA) system maintained by the United States Postal Service (USPS).  The NCOA system contains new addresses of people and businesses that have moved

2

over the past 48 months and notified USPS of their new addresses. Standardizing and updating addresses prior to mailing using NCOA is industry standard and improves delivery rates.

8.     Class Notices that are returned as non-deliverable will be reviewed and re-mailed as appropriate. In the case of Class Notices returned as non-deliverable with an automatic forwarding order, the Class Notices will be re-mailed to any address indicated by the USPS in the automatic forwarding order. Rust will work with Class Counsel to determine next steps for Form Notices returned as non-deliverable without a forwarding address. Those steps may include manual tracing through TransUnion or a similar vendor to obtain a more current address. TransUnion uses a variety of third-party sources to compare the latest addresses for individuals and potential heirs. If any such address is found, the Class Notices will be re-mailed to the most up-to-date address.

### *Outreach*

9.     The Summary Notice was designed to be noticed and easy to understand. Class Counsel will work with local community centers and places of worship to post and share the Summary Notice. Class Counsel will also assist by making personal visits to Class Members as needed to encourage them to respond.

### ***Class Member Response Mechanisms***

10.     The Class Notice and Summary Notice contain information about the website, toll-free number, and Post Office Box for contacting the Notice Administrator.

11.     Throughout the Claims Period, Rust will establish, maintain, and update a dedicated website to enable class members to get information on the settlement. The website will provide access to the Summary Notice and Class Notice approved by the Court, online exclusion request form, as well any other Court documents provided by counsel.

12.    Rust will establish a toll-free number allowing class members to call and listen to answers to frequently asked questions 24 hours a day, seven days a week.  The toll-free number will be operational throughout the claims period.

13.    Rust will establish a U.S. Mail Post Office Box to allow class members to submit Claim Forms, requests for exclusion, and correspondence by mail with any specific requests or questions.

### *Notice Design and Content*

14.    Rust designed the proposed notice documents to comply with Rule 23's guidelines for class action notices.  The notices contain easy-to-read summaries of the litigation and the exclusion and objections options that are available to Class Members.  The notices also provide instructions on how to receive more information about the litigation.  Many courts have approved notices that have been written and designed in a similar manner.

### CONCLUSION

15.    The approach to notice and support that Rust intends to use in this matter is consistent with our standard approach for similar matters.

16.    The Notice Program is expected to reach 100% of the class.

17.    It is my opinion that the Notice Program is adequate and reasonable and provides the best notice practicable under the circumstances. It is consistent with the standards employed by Rust in notification programs designed to reach class members.

I declare that the foregoing is true and correct to the best of my knowledge.

Executed in Longmont, Colorado, this 1st day of March 2025.

_Tiffaney A Janowicz_
Tiffaney A. Janowicz

4

# EXHIBIT A



# Qualifications Summary

This document outlines Rust Consulting's qualifications to serve as the administrator for class action, mass tort, and regulatory settlements on behalf of private sector clients and governmental agencies at all levels, as well as to perform other similar, complex and time-sensitive matters such as remediation programs, data breach responses, and product recalls.

## Firm Overview

Rust Consulting, Inc. was incorporated in 1995 to focus on legal settlement administration, growing out of the litigation support firm The Rust Consulting Group (founded 1976). Since then, Rust has administered over 8,500 projects and distributed over $35 billion, establishing itself as an industry-leading consulting and administration firm that provides public and private sector clients a full complement of services required to administer legal settlements and similar programs.

Rust aligns to the specific practice areas relevant to our clients:

- Antitrust
- Consumer
- Finance
- Insurance and Healthcare
- Labor and Employment
- Product Liability
- Securities

Headquartered in Minneapolis, Rust also has an office in Faribault, Minnesota.

### Personnel

Rust's team includes some of the most experienced practitioners in the industry, with much of that experience Rust-specific. Our senior vice presidents average over 18 years of Rust experience and our functional directors average over 23 years. Our permanent staff of approximately 160 includes professionals with backgrounds and disciplines including project management, information technology, finance, law, and operations.

### Organization

Rust's combination of project-specific teams and shared services results in the highest level of client service and operational efficiencies. Project management personnel, who typically specialize in particular business lines or practice areas to deliver expertise to their clients' engagements, coordinate all administration activities and interact with clients as necessary. Shared-service operations groups, such as call center, print, and mail processing, service multiple Rust project teams across engagements, thus keeping costs to our clients down through efficiency.

# Services

Rust provides high quality administrative services for matters of any size and scope, in many cases using our own in-house capacities. Specific approaches may vary depending upon the requirements of each individual matter; however, the following services are typical of our engagements.

## Preliminary Consulting

Rust consults with clients and all appropriate parties prior to administration (and prior to settlement, when possible) to discuss a settlement's goals and priorities, and to ensure that the resulting settlement processes are designed to meet or exceed those goals while maintaining project timelines and budgets. Through complimentary preliminary consultation, Rust helps clients understand their program options and anticipate issues and costs in managing complex data sets, providing notice, processing claims, and distributing funds, in order to address and resolve up-front the details that can otherwise add unnecessary time and expense in settlement administration.

## Project Management

Rust's project management personnel coordinate all activities between the parties, vendors, and internal Rust departments to ensure work is completed accurately and according to any service level agreements, internal standards, settlement documents, etc. They provide reports and statistics and raise potential issues requiring client attention, as necessary, and prepare declarations or affidavits attesting to the scope and results of Rust's work upon completion of each major phase of administration.

Rust's clients benefit from working with project management professionals whose experience is directly relevant to their unique industry and subject matter.

## Data Management

Rust creates and customizes data management processes, databases, and applications to meet the unique needs of each settlement or project. Rust's typical procedure is to receive, receipt, and load all files and/or databases with data received from counsel, defendants, or some other source. We then employ several programmatic scripts (which have been developed by Rust) to develop a clean class list with names, addresses, and email addresses, if applicable, perform calculations, and carry out any other required tasks.

All data undergoes quality assurance processes in a test environment before being loaded into the production environment of our proprietary claims processing application (see *Claims Processing*, below), which allows for updates of class member records during the course of administration (e.g., claims information, mailing history, name and address changes, call notes and questions askes, etc.) while maintaining a full audit log of any changes and historical information.

## Notification

Notification comprises direct notice via mail and email, and media notice via paid advertising and earned media across channels (e.g., newspapers, magazines, banner ads, and social media). Rust disseminates hundreds of millions of notices annually in legal settlements (to notify class members or other affected individuals of their legal



rights and options), as well as data breach responses, recalls, and remediation programs (to inform affected individuals about the situations and any options they may have).

Our experts design effective notice programs to meet any budget, draft plain language content, and print and mail using our in-house capabilities or a trusted vendor. When traditional mail is returned by the U.S. Postal Service as undeliverable, Rust undertakes address location efforts via automated batch processing and/or manual searching, as appropriate.

Rust manages email notice campaigns entirely in-house, without an outside vendor. With this level of control over not just content, but precise scheduling and deployment, adherence to best practices, and adjusting to account for any unforeseen circumstances, Rust routinely achieves the highest levels of delivery and open rates.

Rust also provides qualified, court-recognized expert testimony in the form of detailed affidavits and declarations demonstrating to courts, plaintiffs, and defendants that our notice programs reach class members efficiently and comply with the highest requisite standards. In fact, we played a major role in pioneering the use of measurable standards to evaluate the reach of class members through paid media. Rust has never had a notice program successfully challenged in court.

With administration and notice experts, we consult with our clients and design the most effective notice programs to meet their budgets.

### Representative Notification Experience

| Notices | Case |
|---|---|
| 183 million (email) | *In re Domestic Airline Travel Antitrust Litigation,* MDL 2656 (D.D.C.). |
| 83 million | *In re Target Corporation Customer Data Security Breach Litigation,* MDL 2522 (D. Minn.). |
| 31 million | *In re Lawnmower Engine Horsepower Marketing and Sales Practices Litigation,* No. 2:08-md-01999 (E.D. Wis.). |

## Contact Center

Rust supports the programs we administer through an assortment of contact center services available up to 24/7 for class members and other affected individuals worldwide. Live agents provide telephone support in our own domestic, in-house call center, located in our Minneapolis headquarters. Our long-running relationship with a local staffing agency allows us to quickly ramp up to meet urgent project needs.

In lieu of or in conjunction with live service, Interactive Voice Response (IVR) systems provide 24/7 service to toll-free numbers with prerecorded menu options such as program overviews, frequently asked questions and answers, and options for requesting forms or filing claims. Rust has also designed, deployed, and managed thousands of case-specific websites, with and without claims filing capabilities, that facilitate our clients' communications goals and give class members convenient, 24/7 access to accurate settlement information while keeping the cost of administration low.



*Rust Consulting Qualifications Summary,* 4

Typical engagements include English- and Spanish-speaking agents, while we provide support in additional languages, as required, through our live call center as well as multilingual IVR and websites.

### Representative Contact Center Experience

| Calls | Case |
|---|---|
| 3.6 million | Independent Foreclosure Review |
| 1.5 million | *Dyson v. Flagstar,* No. DKC93-1503 (D. Md.). |
| 1.4 million | National Mortgage Settlement |

| Website Visitors | Case |
|---|---|
| 9.5 million | *Jabbari v. Wells Fargo,* No. 15-cv-02159 (N.D. Cal.). |
| 5.5 million | *In re Compact Disc Minimum Advertised Price Antitrust Litig.,* MDL 1361 (D. Me.). |
| 5 million | Independent Foreclosure Review |

## Claims Processing

Rust develops and executes claims processing and adjudication programs as required by the diverse terms of our engagements. Our experienced professionals consult on processes that balance class member participation, fraud prevention, and cost efficiency, offering recommendations to help ensure the level of scrutiny is proportionate to the value of benefits to be distributed and the project's budget.

Rust operates on a comprehensive claim processing platform, the Class Action and Remediation Management System (CARMS). An in-house claims processing platform custom-designed, built, maintained, and hosted directly by Rust technical staff, CARMS is comprised of integrated modules that provide internal claims processing functions and support electronic submissions by individual claimants as well as third parties. Regardless of the method of submission (electronic or hard copy), Rust processes all claims in-house using CARMS, with quality control measures incorporated to ensure accuracy.

To meet the needs of each engagement, Rust's systems can be configured to give clients or authorized parties secure online access to claimant data and reporting.

### Representative Claims Processing Experience

| Total Claims | Case |
|---|---|
| 3.5 million (3.4 million online) | *In re Compact Disc Minimum Advertised Price Antitrust Litigation,* MDL 1361 (D. Me.). |
| 3.2 million | *In re American International Group, Inc. Securities Litigation,* No. 04-cv-8141 (S.D.N.Y.) (Company, PwC, Starr, and Gen Re settlements). |
| 3 million | Abbott Infant Formula Settlements |



## Fund Management, Distribution, and Tax Reporting

Rust annually distributes billions of dollars associated with a wide range of projects, from the very large to the more conventional, via mailed checks, electronic payments, or other benefits (vouchers, product codes, etc.). We prepare affidavits for courts that explain the amounts paid, follow up with class members who require reissues or special handling, and handle post-distribution funds as required (via *cy pres* programs, escheatment, subsequent distributions, reversion to defendants, payments to the U.S. Treasury, etc.). Rust is especially adept at handling ongoing, multiyear distribution projects.

Our Bank and Tax group is responsible for day-to-day banking and tax reporting functions for all settlement funds, as well as managing escrow and IRS compliance issues -- such as disbursement and cash management, 1099 and W-2 tax reporting, and Qualified Settlement Fund tax reporting -- on behalf of clients.

While the traditional mailed check and envelope is still the most common form of payment, Rust offers electronic distributions via PayPal, Venmo, Zelle, and other platforms, which (depending on unique settlement factors like class member demographics) may be a more cost-effective alternative to printing and mailing checks, particularly when class members' email addresses are available and up to date.

### Representative Distribution Experience

| Total Distributed | Case |
| --- | --- |
| $3.6 billion | Independent Foreclosure Review |
| $1.5 billion | National Mortgage Settlement |
| $800 million | *Naef v. Masonite Corp.*, No. CV 944033 (Ala. Cir. Ct. Mobile County). |

| Total Recipients | Case |
| --- | --- |
| 16 million | *In re Checking Account Overdraft Litigation*, No. 1:09-MD-02036 (S.D. Fla.). (Bank of America Settlement) |
| 5.3 million | *In re Checking Account Overdraft Litigation*, No. 1:09-MD-02036 (S.D. Fla.). (JPMorgan Chase Settlement) |
| 4.2 million | Independent Foreclosure Review |

# Data and System Security

The security of systems and applications and confidentiality of data are of utmost importance to Rust, our clients, the parties to engagements we administer, and members of the public impacted by our operations. Thus Rust actively protects its systems and mitigates potential threats by adhering to a comprehensive assortment of security best practices, certifications, and audits that we refer to collectively as our "unified compliance posture," as a result of which **Rust has never experienced a breach or fallen victim to a ransomware or other malware attack.**



As part of our unified compliance posture, Rust:

- Has received from two federal agencies (CFPB and FTC) Authority to Utilize Controlled Unclassified Information under the guidelines of FISMA, NIST 800-171, and NIST 800-153, and Authority to Operate under FISMA from the SEC.
- Undergoes an annual SSAE18 SOC 2 Type II Report audit of our data and system security controls and protocols.
- Complies with applicable laws, such as the Sarbanes-Oxley Act (SOX), Gramm-Leach-Bliley Act (GLBA) and the Health Insurance Portability and Accountability Act (HIPAA).
  - Rust has extensive experience managing issues related to HIPAA in the course of class action settlement and mass tort administration. Our specialized knowledge of HIPAA regulations allows for efficient handling of inquiries made by consumers, and Rust plans for certain aspects of any project involving HIPAA with enhanced quality assurance measures in the print and mail process to prevent any disclosure of sensitive information.
- Continues to adhere to the (now invalidated) controls formerly known as the U.S.-E.U. Privacy Shield Framework.
- Adheres to documented and audited processes.
- Maintains a business continuity plan to ensure uninterrupted, secure service.
- Has implemented controls to prevent unauthorized access or disclosure, maintain data accuracy, and ensure the appropriate use and confidentiality of information, either for its own purposes or on behalf of our clients.
- Has put in place appropriate physical, electronic, and managerial procedures to safeguard and secure the information we process.
- Processes personal information only in ways compatible with the purpose for which it was collected or subsequently authorized to do.



# EXHIBIT B





Senior Vice President

# Tiffaney A. Janowicz, Esq.

**920 2nd Avenue South, Suite 400**
**Minneapolis, MN 55402**

**M:** 612.770.8805
**E:** tjanowicz@rustconsulting.com

## Education & Certifications

- **J.D.** William Mitchell College of Law, 1995 (St. Paul, MN)
- **B.S.** University of Minnesota, 1990 (Minneapolis, MN)

Tiffaney Janowicz leads Rust's consumer, product liability, and insurance and healthcare practice areas, with a depth of experience in antitrust matters. She is also a recognized expert in designing and deploying legal notice programs and has provided expert opinons and testimony on the adequacy of notice in both state and federal courts.

Janowicz began her career as a consultant at Rust in 1996 and was promoted to senior vice president in 2003. In her current role, Janowicz has led the class action notice and claims administration programs for some of the most complex and largest settlements in history, including Microsoft's antitrust settlements for the states of California, Iowa, Minnesota, New York and Wisconsin, as well as the multi-district litigation involving price-fixing allegations of Dynamic Random Access Memory (DRAM) in the United States. In addition to providing guidance to the project management professionals on implementation of best in class settlement administration, Tiffaney is responsible for Rust's robust capabilities in developing plain language class and settlement notice programs designed to be disseminated through print, digital and social media platforms. She is a thought leader in the notice and claims administration, writing and speaking on the topic.

## Recent Declarations

- *Jones v. City of New York*, No. 17 Civ. 7577 (S.D.N.Y.).
- *Githieya v. Global Tel Link*, No. 1:15-CV-00986 (N.D. Ga.).
- *Hamm v. Sharp*, No. 19-cv-488 (M.D. Fla.).
- *Marya v. Warner Chappell*, No. CV 13-04460 (C.D. Cal.).
- *Gold v. Lumber Liquidators*, No.  3:14-cv-05373 (N.D. Cal.).
- *Fleisher v. Phoenix*, No. 11-cv-8405 (S.D.N.Y.).

- *Farar v. Bayer*, No. 3:14-cv-04601 (N.D. Cal.).
- *Royal Mile Company v. UPMC*, No. 2:10-cv-01609 (W.D. Penn.).
- *In re CenturyLink Sales Practices and Securities Litigation*, MDL 17-2795 (D. Minn.).
- *Opalka v. Amalie Oil*, No. 18-40605 (Fla. Cir. Ct. Miami-Dade County).

# Case Experience

Following are some additional details of cases that Rust has administered under the leadership of Janowicz.

- ***Jones v. City of New York***, **No. 17 Civ. 7577 (S.D.N.Y.).** Janowicz opined to Rust's robust notice program that included TV, radio, newspapers and magazines, posters on buses and in subway stations, bulletin board posters in community centers, and outreach groups in New York to canvas neighborhoods to reach people who were in jail in New York City and posted bail, but were detailed for three hours or more after bail. Rust also worked with an organization that provided class members with advice as to whether they would potentially risk their government benefits if they made a claim and received a payment. The Court called the return rate of over 40% "truly stunning" and found the expansive notice regime impressive.

- ***In re: CenturyLink Sales Practices and Securities Litigation***, **No. 17-2795 (D. Minn.).** Rust received several data files that constituted the class list and which included more than 17 million rows of information. After Rust's data team concatenated and updated that data, Rust ultimately sent notice of the settlement to 6.5 million potential class members via email, and 6.7 million via First-Class Mail, eventually distributing 122,000 payments totaling nearly $8.5 million.

- ***Parko v. Shell Oil Company***, **No. 3:12-cv-00336 (S.D. Ill.).** Janowicz was personally appointed as the neutral arbitrator in this $4.83 million class action settlement resolving claims against Shell and ConocoPhillips over groundwater contamination in Roxana, Illinois.

- ***Stinson v. The City of New York***, **No. 10 Civ. 4228 (S.D.N.Y.).** In a major civil rights class action settlement valued at up to $75 million, the City of New York agreed to provide compensation to class members who received summonses from New York police officers that had been issued without probable cause, allegedly in response to a summons quota within the NYPD. Rust mailed 922,000 notices and managed a website that received 131,000 unique visitors.

- ***Chaudhri v. Osram Sylvania***, **No. 11-CV-05504 (D. N.J.).** A lawsuit claimed that Sylvania made misrepresentations regarding the performance of certain premium automotive lighting. The notice program used a mix of direct and media notice that included 1.6 million mailed postcards along with television, radio, and Internet advertising. Rust mailed 1.4 million checks totaling $16 million.

- ***In re: Target Corporation Customer Data Security Breach Litigation***, **MDL No. 14-2522 (D. Minn.).** Plaintiffs claimed that Target did not adequately protect their payment card data and personal information and that Target delayed in providing notice of a widespread data breach. Rust's direct notice program consisted of 12 million mailed notices and 71 million email notices.

- ***In re Dynamic Random Memory (DRAM) Antitrust Litigation***, **MDL No. 1486 (N.D. Cal.).** The lawsuits combined into this multi-district litigation claimed that the Defendant companies fixed the price of DRAM in the United States, causing individuals and businesses to pay more for DRAM and DRAM-containing devices. The combined direct and indirect settlements totaled $310 million.

- ***Maksimovic v. Sony of Canada Ltd.*, Ontario Superior Court of Justice, No. CV-11 425487-00CP.** This Canadian settlement resolved allegations that Sony failed to adequately safeguard the computer systems used to provide the Sony PlayStation Network, the Qriocity service, and the Sony Online Entertainment services, which were attacked by criminal intruders in April 2011. Rust managed the translation of all materials into French and provided all documentation and communication in both English and French.

- ***In re Nutella Marketing and Sales Practices Litigation*, No. 3:11-cv-01086-FLW-DEA (D.N.J.).** Plaintiffs claimed that Defendant Ferrero U.S.A., Inc. made representations through its marketing and advertising of Nutella® brand hazelnut spread, improperly suggesting that Nutella is healthier than it actually is. Rust placed notice of the settlement in magazines and banner ads on popular websites; the settlement website received over 1 million visits and over a quarter million consumers filed claims.

- ***In re Online DVD Rental Antitrust Litig.*, MDL No. 2029 (N.D. Cal.)** Rust sent over 34 million email notices to potential class members in this project. Rust has processed more than 1.1 million claims for gift cards or cash benefit in this ongoing project. Rust also created a settlement website which received over 2.2 million site visits.

- ***Microsoft I-V Cases*, J.C.C.P. No. 4106, (Cal. Super. Ct. S.F. County).** Janowicz was responsible for the design and management of the direct mail notice program that involved the mailing of 18 million notice-and-claim form packages and deployment of 7 million email notices to a class consisting of consumers who purchased at retail selected Microsoft software for use in California.

- ***The Authors Guild, Inc. v. Google, Inc.*, No. 05-cv-8135 (S.D.N.Y.).** Janowicz led and continues to lead her team in the administration services provided this settlement involving rights-holders around the world. Janowicz oversaw the translations of the claim forms and supporting materials and well as the provision of telephone support in more than 30 languages.

- ***Thompson v. Metropolitan Life*, No. 00-CIV-5071 (W.D. Pa.).** Janowicz was responsible for overseeing services for this race-based underwriting settlement, which included an estimated 25 million policies. Rust mailed more than 550,000 customized and 104,000 generic notices to potential class members. Rust's call centers answered calls generated by both the mailed notice and an extensive media campaign. During the national TV noticing campaign, there were 500 call center operators in two sites.

- ***McNeil v. American General Life & Accident*, No. 3:99-1157 (D. Tenn.).** Janowicz managed Rust's claims administration services for this settlement covering 9 million class members. Rust mailed over 3 million notices within approximately two weeks. Rust also arranged for an ad campaign to help reach class members for whom the company did not have current addresses. Rust received 600,000 calls on this project, and printed and mailed more than 440,000 payments.

- ***Naef v. Masonite Corp.*, No. CV 944033 (Ala. Cir. Ct. Mobile County).** Project involved receiving and processing according to pre-determined criteria (including proof of property ownership, proof of product ownership, and proof of damage) more than 400,000 claims, eventually distributing more than $800 million to more than 260,000 claimants whose claims were validated. Janowicz co-directed the initial design of the claims intake process of this 10-year claims program, and managed claims review and contact center operations.

## Thought Leadership

- Co-Author, **"Key Considerations for Detainee Settlements,"** Rust Insights, Dec. 2023
- Co-Author, "**Managing Multiparty Settlements**," Rust Kinsella Insights, Nov. 2022
- Co-Author, **"How Else Can We Help You? Leveraging Administrators Beyond Class Actions,"** Rust Kinsella Insights (Dec. 2021).
- Co-Author, **"Pandemic, Printing, and Postage: How COVID-19 and Postal Issues Impact Settlement Administration,"** Rust Kinsella Insights (Oct. 2021).
- Co-Author, "**The Plain Language Toolkit for Class Action Notice,**" in *A Practitioner's Guide to Class Actions, 3rd Ed.* (Marcy Greer ed., 2021).
- Speaker, "**How to Get Your Notice Actually Noticed: Claims Stimulation 3.0,**" Women Antitrust Plaintiffs' Attorneys, Napa, CA (June 2018).
- Webinar Speaker, "**Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement,**" American Association for Justice (Sept. 2016).
- Speaker, "**Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement,**" Plaintiffs' Forum, Rancho Palos Verdes, CA (Apr. 2015).
- Co-Author, **"Estimating Claims – What Every Attorney Should Know,"** What We've Noticed, Feb. 2015
- Co-Author, **"Increasing Judicial Attention to Claims-Filing Rates,"** What We've Noticed, Oct. 2014
- Co-Author, **"The Case for Simplified Notice and Claims,"** What We've Noticed, July 2014
- Co-Author, **"Tracking Ted…,"** What We've Noticed, April 2014
- Panelist, **"Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates, and More – Minimizing Court Scrutiny and Overcoming Objector Challenges,"** Strafford CLE Webinar, Feb. 2014
- Co-Author, **"Efficient, Cost-Effective Notification and Administration in Antitrust Class Actions,"** Class Action Perspectives, 2013
- Co-Author, **"Recent Court Decisions Indicate Greater Scrutiny of Class Notice Programs,"** What We've Noticed, Dec. 2013
- Panelist, **"Mechanics, Logistics & Statistics: How to Settle a Class Action Lawsuit,"** FDCC Section Presentations for CLE 2013 Winter Program, March 2013
- Panelist, **"Emerging Trends in Class Action Notice,"** CLE International 6th Annual Conference Class Actions: Hot Topics, Winning Strategies and More, June 2010
- Speaker, **"Class Action Notice and Claims Administration: Trends and Innovation,"** Women Antitrust Plaintiffs' Attorneys Networking Event, Aug. 2009
- Author, **"Anticipating Claims Filing Rates in Class Action Settlements,"** Class Action Perspectives, Nov. 2008

## Bar Admissions

- Licensed to practice law in Minnesota



# EXHIBIT H

Thomure v. SRG Global Coatings, LLC
Settlement Administrator -8900
P.O. Box 2599
Faribault, MN 55021-9599

| FOR OFFICIAL USE ONLY |
| --- |
| 01 |

Page 1 of 1

IMPORTANT LEGAL NOTICE

<<Barcode>>

<<Property_Owner1>>
<<Property_Owner2>>
<<Address1>>
<<Address2>>
<<Address3>>
<<City>>, <<State>> <<Zip10>>
<<Country>>

Property Owner(s):
<<Property_Owner1>>
<<Property_Owner2>>

**Claim Form Postmark Deadline: [Postmark Date]**

This form has been customized for your property. Please indicate any updates or changes to your **current** mailing address:

_____

_____

Property Address: <<Property_Address>>
<<Property_City>> <<Property_State>> <<Property_Zip>>

Parcel ID: <<Parcel_ID>>

Claimant ID: <<Claimant_ID>>

| Thomure v. SRG Settlement Claim Form |
| --- |

**Claim Eligibility**

In order to receive a payment from the SRG Settlement, you **must** check the following boxes, and all of the Property and/or Deed Owners listed above **must** sign this Claim Form.

☐ I/we expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever release, waive, compromise, settle, and discharge the Settling Defendant and the Released Parties from any and all past, present, and future claims, actions, causes of action, judgments, verdicts, rights, demands, theories of recovery, damages, losses, injuries, harm, covenants, promises, contracts, agreements, obligations, liabilities, debts, liens, fees, costs, expenses, punitive damages or compensation whatsoever, of whatever nature, kind, or character, including, but not limited to, nuisance, negligence, trespass, property damage, economic harm, medical monitoring, fear of disease, increased risk of disease, and any other non-physical injury or non-death form or category of loss, harm, or injury, whether based upon statute, common law, or regulation, whether in equity or at law, that in any way or to any extent relate to, arise out of, or result from the occurrences alleged in the Lawsuit, or that were or could have been asserted in the Lawsuit, except for personal injury claims.

☐ Check here if you are currently legally married. If you are married, you must complete this Claim Form on behalf of you and your spouse, even if your spouse does not have an ownership interest in the property.  **Your spouse must sign the Claim Form**

| Confirmation and Signature |
| --- |

By signing below, I am/we are also confirming:

• I/We have read this Claim Form and certify that the information supplied in this Claim Form is true and correct.

Each Property Owner must personally sign below and note any changes to their name. If this is not possible because:

• The Property Owner is deceased, please check the box noted below.
• The Property Owner is unable to sign, or if the person completing this form is not a Property Owner, the person completing the form should sign in the Representative Signature box and complete the Reason the Property Owner is unable to sign.

**I/We hereby certify under penalty of law, that the above and foregoing is true and correct.**

_____    _____    _____
Property Owner's Signature                    Print Name and indicate name change if applicable      Date

_____    _____    _____
Spouse's Signature                                 Print Name and indicate name change if applicable      Date

☐ The Property Owner is deceased          ☐ The Property Owner is unable to sign

_____    _____    _____
Representative Signature                        Print Name and relationship to Property Owner         Date

Reason the Property Owner is unable to sign (include documentation such as Power of Attorney or Executor Appointment)

| Return this completed Claim Form, postmarked no later than **[Postmark Date]** to the address at the top of this Claim Form. |
| --- |