IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DOROTHY THOMURE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| SRG GLOBAL COATINGS, LLC, (*d/b/a* SRG Global Farmington), | ) Case No. 4:23-cv-00375-HEA ) ) |
| Defendant. | ) ) ) ) |

# MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

Plaintiff Dorothy Thomure, individually and on behalf of all others similarly situated ("Plaintiff"), and Defendant SRG Global Coatings, LLC ("Defendant") (collectively, "Parties"), by and through their undersigned counsel, respectfully seek final approval of the class-wide Settlement Agreement that is attached as **Exhibit 1**.

In this action, Plaintiff alleges, on behalf of herself and all others similarly situated, that PFAS and metals migrated from Defendant's manufacturing facility and onto the properties and into the well water of the neighboring homes and properties in and around the Defendant's facility in Farmington, Missouri. The settlement in this case was reached after two mediation sessions facilitated by an experienced private mediator and subsequent negotiations over the course of multiple months. Through arm's length negotiation, the Parties reached an agreement to settle the claims of Plaintiff and the Settlement Class.

On April 3, 2025, the Court granted preliminary approval of the Settlement Agreement. (ECF No. 29). Following the Court's grant of preliminary approval, the Parties complied with all of the requirements of the Settlement Agreement. Pursuant to the Preliminary Approval Order,

Rust Consulting, Inc., Class Administrator, subsequently mailed the Class Notice, and Class Members were given the opportunity to make claims, opt-out, or object to the Settlement. While the residents of 70 households have submitted claims for payment, not a single objection was received, and 15 households validly opted out. As discussed below, the terms of the Settlement Agreement create substantial benefits for the real property deed holders and their spouses of the Settlement Class, are fair, reasonable, and adequate, and meet the requisite criteria under Fed. R. Civ. P. 23(e) for receiving final approval. As such, the Parties respectfully request that the Court grant the Parties' Motion for Final Approval of the Class Settlement.

> I. **BACKGROUND AND SUMMARY OF SETTLEMENT**
>
> A. **Plaintiff's Claims**

On March 23, 2023, Plaintiff filed this class action alleging that Defendant, through the operation of its manufacturing facility, caused chemicals and metals, including PFAS, hexavalent chromium, chromium, and nickel to migrate from the Defendant's facility into the soil, groundwater, and drinking water of the neighboring homes and properties in and around Defendant's facility in Farmington, Missouri. Plaintiff alleges that she, like many other Class Members, receives water from a private well located on her property that, like many other Class Members, is allegedly contaminated by PFAS and other chemicals, which Plaintiff alleges migrated from the SRG Facility for many years to the present. Plaintiff and Class Members allege that they are in need of an alternative water source to their private wells based on the alleged contamination by PFAS and other chemicals. The Complaint asserts four causes of action: Negligence (Count I), Private Nuisance (Count II), Medical Monitoring (Count III), and Trespass (Count IV). Plaintiff also seeks various categories of damages and requested relief on behalf of herself and the putative class, including medical monitoring, declaratory relief,

2

injunctive relief, general damages, compensatory damages, nominal damages, punitive damages, and attorneys' fees and costs.

### B. Summary of the Proposed Settlement

Through arm's length negotiation, the Parties reached an agreement to settle the claims of Plaintiff and the Settlement Class, as set forth in the Settlement Agreement attached as **Exhibit 1**. Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and factual issues presented in this action, the risks and expenses involved in pursuing the litigation to conclusion, the protracted nature of the litigation, and costs. Although Plaintiff believes she will prevail on class certification and at trial, Defendant maintains that it has meritorious defenses to class certification and liability. In light of these positions and the risks and expense of litigation for both sides, the Settlement Agreement represents a reasonable resolution of the claims on a class-wide basis. Based on their review and analysis, Plaintiff and Defendant agreed to and executed the Settlement Agreement. The Parties now seek final approval of the Parties' Class Action Settlement.

The key terms of the Settlement Agreement are as follows:

(a) *Class Certification*. The Parties have stipulated to certification of a Settlement Class, for settlement purposes, consisting of: all deed holders, and deedholders' spouses who own property in the Class Area; provided, however, that the "Class" shall not include (a) Defendants, their corporate officers, or their legal counsel in this Lawsuit; (b) Class Counsel, including its partners, members, and shareholders, or (c) the judge to whom this Lawsuit is assigned, any member of the judge's immediate family, or any other judicial officer assigned to this case. *See* Settlement Agreement, Section 1.3.

(b) *Relief to Plaintiff and the Settlement Class*. Pursuant to the terms of the Settlement

3

Agreement, the Plaintiff and Settlement Class will receive the funds available in the total Settlement Fund, subject to the terms of the Settlement Agreement. Under those terms, the total amount of the Settlement Fund was subject to reduction based on the percentage opt-out rate. In light of the 15 valid opt outs from the settlement, the total Settlement Fund was reduced from $3,500,000 to $3,080,000. Furthermore, under the Agreement, Defendant also agreed to implement a "Permanent Water Solution" as equitable relief to settle the Lawsuit. To implement a "Permanent Water Solution," as defined in Section 1.22 of the Settlement Agreement, means Defendant will extend a City of Farmington water mainline ("mainline extension") to the proximity of each property in the settlement Class Area. Defendant will pay the cost to connect to the mainline extension each property within the Settlement Class owned by a Releasing Party,[1] up to a total cost of $6,000 per home, if the Releasing Party (1) agrees within 90 days of completion of the mainline extension, and (2) cooperates with Defendant to connect their property to the City water mainline. Within twenty-four (24) months after Defendant's receipt of any final required approval or permitting authority by the City of Farmington, the County of St. Francois, or the State of Missouri to implement the mainline extension, Defendant will implement a Permanent Water Solution. Defendant positively affirms it has authorized a contractor to begin the permitting process and will use all due diligence and necessary effort required to complete the permitting process to procure any required final approval and/or permitting authority. Said good faith efforts to attain needed authority are part of the injunctive relief and important to and material to the injunctive relief. With written notice to Defendant, any Releasing Party will within thirty (30) days of a written request, be provided an update on the

---

[1] As this term is defined in Section 1.29 of the Settlement Agreement, Releasing Party means all members of the Settlement Class in the Class Area who did not opt out of the Class Settlement.

status of the mainline extension and summary of the final approval and/or permitting authority status and efforts and the status and efforts to provide a Permanent Water Solution.

(c) *Class Notice*. On April 24, 2025, the Class Administrator mailed 89 Court-approved Class Notices (ECF No. 26-5) together with the Claim Form (ECF No. 26-11) via first class mail using a comprehensive list of Class Members' last known addresses provided by Class Counsel. Of the 89 Notices mailed, no one objected to the Settlement and 15 households elected to opt-out of the Settlement Class. Ultimately, six (6) Class Notices were undeliverable. (ECF No. 34-2 at 2). After conducting a skip trace, Rust was able to identify new addresses for three (3) Class Members and remailed Notices to those individuals. (*Id.*) Of the remaining three (3) Notices that were undeliverable, the Class Members either submitted claims or opted out prior to Rust conducting a skip trace. (*Id.*)

The Class Administrator also implemented a Settlement website containing: (i) the instructions and deadlines for any objections, requests for exclusion, and submission of Claim Forms, (ii) instructions on how to contact the Claims Administrator and Class Counsel for assistance; (iii) a copy of the Claim Form, Class Notice, Opt-Out Form, the Settlement Agreement, and the Preliminary Approval Order; and (iv) the deadlines and instructions for any objections, requests for exclusion, mailing of claims, and the date, time, and location of the final fairness hearing. The Settlement website also includes answers to frequently asked questions and information on how to contact the Claim Administrator for more information and to ask questions.

(d) *Class Representative Incentive Payment*. Subject to this Court's approval, the Class Representative, shall also receive $15,000.00, in consideration of her assumption and diligent performance of the duties of class representative, and the time and effort she expended in

5

connection with the Lawsuit.

(f) *Attorneys' Fees and Expenses*. Subject to approval by the Court, Plaintiff requests, and Defendant does not object to, Class Counsel's receipt of 26% of the Settlement Fund to be calculated prior to reimbursement of costs and expenses, as attorneys' fees, plus reimbursement for all expenses reasonably incurred by Class Counsel in prosecuting this Lawsuit.

## II. ARGUMENT

### A. Standard for Final Settlement Approval

Courts look favorably on the settlement of disputed claims, and settlement is especially favored in class actions because it minimizes the litigation expenses of all parties and reduces the strain on judicial resources. *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (in a class action context, providing that "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"). A district court may approve a class action settlement only after determining that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, a district court should consider (1) "the merits of the plaintiff's case [ ] weighed against the terms of the settlement," (2) "the defendant's financial condition," (3) "the complexity and expense of further litigation," and (4) "the amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988).

Applying these factors, the Parties respectfully request that the Court grant final approval of the Settlement.

### B. The Class Settlement is Fair, Reasonable, and Adequate

#### i. *The Merits of the Case Weighed Against the Terms of the Settlement*

The most important factor in determining whether a class settlement is fair, reasonable,

6

and adequate is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). While Plaintiff believes she would prevail on class certification and on the merits if this case had proceeded to trial, Plaintiff recognizes the difficulties presented by class certification issues and any potential success of Plaintiff's claims would be uncertain. Defendant maintains that it has meritorious defenses to class certification and liability. Defendant intended to vigorously contest this matter, including at class certification, summary judgment, trial, and on appeal of any appealable rulings in favor of Plaintiff. Accordingly, if the claims asserted in the action were not settled by agreement among the parties, future proceedings would be lengthy and expensive, involve highly complex legal and factual issues relating to class certification, liability, and damages. In light of these positions and the risks and expense of litigation for both sides, in assessing the Settlement Agreement, the Court should balance the benefits afforded to the Settlement Class, including the immediacy and certainty of a recovery for a definitive Settlement against the risks of continued litigation. *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (finding the settlement provided "substantial and immediate benefits to the class" weighing in favor of approving the settlement); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 627 (S.D. Iowa 2016), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017), and *aff'd sub nom. Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ("[Defendant] had credible defenses that could be accepted by a fact-finder; Plaintiffs' ability to recover by proceeding to trial was not inevitable. The settlement fund ensures that class members will receive an adequate percentage of their damages and mitigates the risk inherent in taking these legal claims to trial. Thus, this factor weighs strongly in favor of approving the settlement and finding it to be fair and reasonable.").

    In contrast to the risks and uncertainties of litigation, the Settlement confers substantial

and immediate benefits to the Settlement Class. As described in more detail in the Settlement Agreement, the benefits to the Settlement Class include monetary relief to the Settlement Class and implementation of injunctive relief in the form of a Permanent Water Solution, the extension of City water to the area, and continued provision of an Alternative Water Solution, as this term is described in Section 3.4 of the Settlement Agreement, including continued provision of bottled water until twenty-four (24) months after entry of a Final Approval Order or up to three months after the Permanent Water Solution is implemented, whichever is later. Defendant will provide a Permanent Water Solution within the 24 months of Defendant's receipt of any final required approval or permitting authority by the City of Farmington, the County of St. Francois, or the State of Missouri.

Accordingly, the benefits provided by the Settlement, weighed against the merits of the case, support this Court's grant of final approval.

    *ii.*    ***Defendant's Financial Condition***

Pursuant to Defendant's representation to this Court, Defendant's financial condition poses no threat to its ability to implement the terms of the settlement. As such, this factor weighs in favor of approving the settlement. *See In re Wireless Tel.*, 396 F.3d at 933 (concluding that the "financial condition" factor weighed in favor of approval because there was "no indication that [the defendant's] financial condition would prevent it from raising the settlement amount"); *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 219 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) (finding financial condition factor weighed in favor of approval where defendant represented they had the "financial ability to comply with the terms of the settlement").

    *iii.*    ***Complexity and Expense of Further Litigation***

"Class actions place an enormous burden of costs and expense upon parties." *Schmidt v.*

*Fuller Bush Co.*, 527 F.2d 532, 535 (8th Cir. 1975). If this case were to proceed without settlement, numerous depositions and future proceedings would be protracted and expensive, involve highly complex legal and factual issues relating to, among other things, class certification, liability, merits, and damages, and would involve substantial uncertainties, delays, and other risks inherent in litigation. Indeed, the Parties would need to engage in robust discovery, and this would require multiple depositions of fact and expert witnesses. Then, the Parties would need to prepare class certification briefing, expert reports, and likely file *Daubert* motions. While Plaintiff believes that she could certify a class, she also recognizes that Defendant planned to raise numerous defenses to class certification, and there is no guarantee that Plaintiff could certify a class, and either side would likely appeal any class certification decision.

Absent settlement, any potential resolution would likely take multiple years. *See In re Wireless Tel.*, 396 F.3d at 933 (finding that a settlement was in the best interest of the class because, "barring settlement, this case would 'likely drag on for years, require the expenditure of millions of dollars, all [ ] while class members would receive nothing'"). As a result, the "complexity and expense" factor weighs in favor of final approval.

    iv.    ***Amount of Opposition to the Settlement***

No Class Members objected to the Settlement. By not filing objections, the Class Members have tacitly indicated their approval of the Settlement. Although approximately 16 percent of the class opted out of the Class with respect to the claims for the monetary relief, a request for exclusion from the Class does not necessarily evidence opposition to the settlement. Class members may request exclusion for a number of reasons, including that they do not wish to participate in the settlement. The absence of objections supports approval of the Settlement as

fair and reasonable.

As such, this factor weighs in favor of approving the settlement.

### C. Rule 23 Certification Factors Are Satisfied.

To grant final approval, the Court must find that the four prerequisites of Rule 23(a) are satisfied and that the Settlement Class fits within one of the categories of Rule 23(b).

For settlement purposes only, Plaintiff seeks certification of a Settlement Class composed of: "all deed holders, and deedholders' spouses who live in the Class Area; provided, however, that the "Class" shall not include (a) Defendants, their corporate officers, or their legal counsel in this Lawsuit; (b) Class Counsel, including its partners, members, and shareholders, or (c) the judge to whom this Lawsuit is assigned, any member of the judge's immediate family, or any other judicial officer assigned to this case."

Class certification for settlement purposes under Rule 23 entails a two-step analysis. First, the Court must determine whether the four Rule 23(a)'s requirements are satisfied, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Second, the Court must determine whether Plaintiff has met the requirements of Rule 23(b).

#### i. *The Settlement Class Meets the Requirements of Rule 23(a).*

##### 1. Numerosity

Numerosity requires that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of 70 deedholders and their spouses that have opted into the settlement. Courts have certified classes with less than 40 members. *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 457 (W.D. Mo. 2004) (citing to *Newberg on Class Actions*, § 3.05 at 3–25) ("In

light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). Accordingly, the Settlement Class is sufficiently numerous to meet the requirements under Rule 23(a)(1).

### 2. *Commonality*

The commonality requirement set forth in Rule 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" such that all their claims "can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). "What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes,* 564 U.S. at 350 (*citing Nagareda, Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009)).

Here, there are several common issues including: (a) whether Plaintiff and Class Members were harmed by hazardous chemicals and metals contamination, including, but not limited to, PFA/PFAS, hexavalent chromium, chromium, and nickel, from SRG's facility in Farmington, Missouri; (b) the extent of the alleged migration of the contamination to the surrounding properties; (c) whether Plaintiff and Class Members' claims could be solved by common equitable or injunctive relief; (d) whether Plaintiff and Class Members are entitled to damages and other monetary relief.  Each of these issues are common to the Settlement Class, thus satisfying the commonality requirement.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical" of those of the class. Fed. R. Civ. P. 23(a)(3). The Eighth Circuit defines typicality as "a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990). As courts have explained, the "requirement is fairly easily met where the other class members' claims are similar to the named plaintiffs." *Schoenbaum v. E.I. Dupont De Nemours and Co.*, No. 4:05CV01108, 2009 WL 4782082, at *6 (E.D. Mo. Dec. 8, 2009) (quotations omitted). Here, the Plaintiff's claims are typical because all Settlement Class members allege that they are similarly affected by contamination from Defendant's facility to their private wells, and Plaintiff's alleged contamination and exposure is typical of Class Members. Thus, the typicality requirement has been satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement of Rule 23(a)(4) focuses on "whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982). Here, Plaintiff's interests are coextensive with those of the Settlement Class. Plaintiff's claims, like the claims of the other Settlement Class members, arise from the same alleged contamination from Defendant's facility. Plaintiff's claims are also typical because all members of the Settlement Class seek the same relief. She has no interest adverse to the interests of the other class members.

12

Moreover, as reflected in prior submissions to the Court, Class Counsel has more than 20 years of experience litigating complex neighborhood-pollution environmental torts cases. (ECF No. 26-2). Plaintiff's counsel has been actively involved in every stage of this case and has zealously represented the Plaintiff and the interests of the Settlement Class. Thus, this requirement is satisfied.

### ii. *The Settlement Class Meets the Requirements of Rule 23(b)(2) and (b)(3).*

For settlement purposes only, Plaintiff seeks to certify a Class, under Rule 23(b)(2) and (b)(3), which requires a showing of both predominance—that "questions of law or fact common to class members predominate over any questions affecting only individual members"—and superiority—that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(2) and (b)(3). The Settlement Class here satisfies the requirements of Rule 23(b)(2) and (b)(3).

As to the injunctive relief provided in the Settlement Agreement, Plaintiff seeks certification, for settlement purposes, pursuant to Rule 23(b)(2). Rule 23(b)(2) provides that, "the party opposing the class has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(3) authorizes certification when recovery is an award of possible money damages. The Settlement Class satisfies the requirements of Rule 23(b)(2) and (b)(3).

#### 1. Predominance

Predominance exists here. As discussed above, the numerous common questions of law and facts are identical among the Settlement Class members and predominate over any

13

individual questions. Some of the common questions include, whether Plaintiff and the Settlement Class were harmed by alleged hazardous chemicals and metals contamination from Defendant's facility, and whether, and to what extent, Plaintiff and the Settlement Class suffered damages. All Settlement Class members are commonly affected by alleged pollution on their properties and all Settlement Class members benefit from injunctive relief in the form of a Permanent Water Solution and Alternative Water Solution. As such, predominance is met here.

2. *Superiority*

A class action is superior to other available methods for adjudicating the controversy because the number of Settlement Class members is estimated to be such that joinder is impracticable and the expense and burden of multiple lawsuits is impracticable given the size of the Settlement Class members' claims. The proposed settlement will give the parties the benefit of finality, and because the case has now been settled pending Court approval, the Court need not be concerned with issues of manageability of a trial relating to these claims. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case …would present intractable management problems…"). In addition, the damages and requested relief sought in comparison to the cost of litigation supports a finding of superiority. Thus, the superiority requirement is satisfied.

### D. Distribution of the Class Notice Satisfied Due Process Requirements and the Requirements of Rule 23.

Under Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement.]" Fed. R. Civ. P. 23(e)(1)(B). To satisfy due process, notice to class members must be the best practicable, and reasonably

calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Here, the Court previously approved the Notice Plan contemplated by the Class Administrator. As detailed in the Janowicz Declaration attached as **Exhibit 2**, the Class Administrator carried out the Court-approved Notice Plan and used all reasonable efforts to provide notice to the Settlement Class Members in conformance with the Plan. *See also* ECF No. 26-10, Janowicz Decl. Regarding Notice to Class Members. Accordingly, the Notice Plan ensured that Settlement Class Members' due process rights were amply protected and that the Rule 23(e)(1)(B) requirement has been satisfied.

## II.    CONCLUSION

For the reasons set forth above, Plaintiff Dorothy Thomure and Defendant SRG Global Coatings, LLC respectfully request that the Court grant the Motion for Final Approval of Class Action Settlement, certify the Settlement Class for settlement purposes, and dismiss this action with prejudice.

Dated: July 31, 2025

| | |
|---|---|
| /s/ Ted N. Gianaris<br>Ted N. Gianaris     #48359 (MO)<br>Joshua A. Edelson #70952 (MO)<br>Gianaris Trial Lawyers, LLC<br>One Court Street<br>Alton, IL 62002<br>Telephone: (618) 619-0010<br>Fax: (618) 259-2251<br>Email: tgianaris@lawforpeople.com<br>Email: jedelson@lawforpeople.com<br><br>ATTORNEYS FOR PLAINTIFF | /s/ Allyson E. Cunningham<br>William G. Beck         #26849(MO)<br>Allyson E. Cunningham #64802(MO)<br>Lathrop GPM LLP<br>2345 Grand Boulevard, Suite 2200<br>Kansas City, Missouri 64108-2618<br>Telephone: (816) 292-2000<br>Fax: (816) 292-2001<br>Email: william.beck@lathropgpm.com<br>Email: allyson.cunningham@lathropgpm.com<br><br>Arielle B. McPherson #72928(MO)<br>Lathrop GPM LLP<br>155 North Wacker, Suite 3800<br>Chicago, IL 60606<br>Telephone: 312-920-3300<br>Email: arielle.mcpherson@lathropgpm.com<br><br>ATTORNEYS FOR DEFENDANT |